**TUBECO, INC., Plaintiff,**

v.

**CRIPPEN PIPE FABRICATION CORPORATION and Henry O. Crippen, Defendants.**

No. 73 C 203.

United States District Court, E. D. New York.

Oct. 21, 1975.

---

Sandoe, Hopgood & Calimafde, New York City by Roy C. Hopgood and Arthur M. Lieberman, New York City, for plaintiff.

Morgan, Finnegan, Durham & Pine, New York City by John D. Foley, Robert E. Paulson, and James V. Costigan, New York City (Nelson Littell, Jr., New York City, of counsel), for defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff ("Tubeco") brought this action pursuant to 28 U.S.C. §§ 2201, 2202, seeking a declaratory judgment which would determine that defendants' Patent No. 3,456,468 (1) is invalid, unenforceable, and not infringed by Tubeco or its customers, (2) has been used in unfair competition with Tubeco, and (3) has been used as a false description or representation, and a false designation of origin of goods and services in violation of the Lanham Act, 15 U.S.C. § 1125(a).[1] There being no diversity of citizenship between the parties, subject matter jurisdiction is allegedly based on 28 U.S.C. §§ 1331(a), 1338(a) and (b), and 15 U.S.C. § 1125(a).

The case is now before the court on defendants' (hereinafter "Crippen") motions to dismiss the complaint pursuant to Rule 12(b)(1) and (6), F.R.Civ.P.

---

1. Plaintiff also seeks an accounting of damages attributable to the alleged acts of unfair competition and violation of the Lanham Act. Compl., p. 8.

The grounds urged are that subject matter jurisdiction is lacking because there is no justiciable controversy between the parties regarding the patent in question; and, alternatively, no claim is stated upon which relief can be granted. Extensive briefs, affidavits, exhibits and depositions have been submitted in support of and in opposition to the motions. The court has carefully reviewed these and concludes for the reasons which follow that the motion to dismiss the complaint should be granted.

## FACTS

These facts appear not to be in material dispute. Tubeco is a New York corporation having its principal place of business in Brooklyn. For at least 24 years it has been engaged in the business of pipe fabrication, specializing among other things in the precision custom bending of steel pipe larger than six inches in diameter for use in industrial installations such as chemical and power plants, refineries and the like. Hot pipe bending, as it is called, is essentially a process of heating pipe and bending it into desired shapes around the curvature face of an arced forming die. Tubeco's customer clientele includes well-known large corporations and it regards itself as a major national pipe fabricator and distributor of materials for fabrication as well as "one of the primary sources for the world's requirements of large size pipe bends."[2] Although describing its pipe bending equipment as "unique", see n. 2 supra, Tubeco has never obtained a patent on its apparatus or methods.

Defendant Henry O. Crippen began his training and experience in the art of hot pipe bending while employed by the Sun Shipbuilding and Drydock Corporation during the period 1942–1946. In 1954 he was employed by Tubeco's predecessor, where he was in charge of all hot pipe bending operations and claims to have "[t]ested out during the course of his work most of the principles and concepts later incorporated into his invention",[3] described in the patent hereinafter mentioned. Crippen remained in Tubeco's employ until January 1966, during which period he admittedly "had knowledge of all the equipment used, and all of the processes practiced, by Tubeco, Inc. in its pipe bending and fabrication operations."[4]

After leaving Tubeco, Crippen became self-employed. In March 1967 he filed an application in the United States Patent Office for a patent on a hot pipe bending apparatus and process he claimed was his own invention. On July 22, 1969 United States Patent No. 3,456,468 was issued to Crippen on the apparatus and method described.[5]

While his patent application was still pending, Crippen approached Tubeco about using his alleged innovation. By letter of March 6, 1968, he informed Tubeco of his invention and offered it to Tubeco for its use, admittedly with the expectation of being paid if the offer were accepted. Tubeco responded by letter dated March 20, 1968, declining to permit any further disclosure or discussion of the matter unless an agreement was entered into assuring that Tubeco would be "the sole judges of the novelty and worth of the idea, and that any payment to you would be entirely voluntary on our part."[6]

On or about August 13, 1970, after the patent had issued, Crippen succeeded in arranging a meeting with Tubeco officers and employees at which he explained the patented process in detail for

---

2. See Tubeco brochure, Def.Exh. D, Def. Reply to Pl. Opposition, etc.

3. See Pl.Exh. PDX–5, Pl.Exhs. Appended To Memo., etc.

4. Affidavit of Henry O. Crippen (hereinafter "Aff. Crippen") dated May 8, 1973, par. 17.

5. Crippen assigned the patent on October 31, 1972 to the co-defendant, a Delaware corporation, of which he is president and a director.

6. Exh.F, Def. Reply to Pl. Opposition, etc.

the first time and exhibited drawings which form part of the patent involved. Tubeco's president, Allan B. Wesler, after viewing these, concluded from Crippen's presentation that he was attempting to "sell us our own process" and told him so.[7] Wesler then left the meeting, which ended shortly thereafter without result for Crippen.

There apparently were no further communications between Crippen and Tubeco, except for the two Tubeco letters mentioned below. At some point, Tubeco obtained a copy of the patent, examined it, and concluded it covered processes Tubeco had either used for many years before March 28, 1967, the date of application, or had earlier tried and discarded. On June 3, 1971, Tubeco wrote Crippen stating it considered the patent invalid and that Tubeco "will continue to use all of the procedures which it presently is using and has used in the past."[8] The letter by its terms called for no response from Crippen and none was forthcoming.

Tubeco's next letter to Crippen—written some eighteen months later—demanded a response. That letter, annexed as Exhibit A to the complaint, is dated January 17, 1973, shortly prior to the institution of this action. After informing Crippen that Tubeco considered his patent to have been fraudulently obtained, his claim of inventorship false, and his use of the patent "unfair competition", the letter demanded "that you disclaim your patent forthwith." When Crippen did not respond, this action was begun.

Tubeco's earlier notice and eventual ultimatum to Crippen were obviously a response to news of his further efforts to exploit the patent after the unfruitful meeting at Tubeco. A month or so after that meeting and on September 18, 1970, Crippen Pipe Fabrication Corporation, predecessor of the present co-defendant, was organized in New York.[9] Initially Crippen had explored the possibility of licensing his patented method to other companies engaged in industrial pipe fabrication. Unsuccessful in that effort, he decided to form his own enterprise and enter the heavy industrial pipe bending and fabrication industry in which Tubeco was a principal competitor.[10]

In pursuit of that goal Crippen conducted a campaign of telephone calls, letter writing, and dissemination of brochures and reports directed not only to potential customers for pipe fabrication work but also to banks, insurance companies and other sources of the financing he required. The brochures and reports, which bear dates of November 1970 and June 1971, make reference to Tubeco and other prior employment in describing Crippen's experience and knowledge in the industry and also assert that he designed Tubeco's present equipment, which "represents his early efforts to devise an improved pipe bending apparatus."[11] The claim was also made that "Crippen's patented apparatus represents a significant improvement over any equipment or method currently in use" and that "[a]ll of the components and concepts embodied . . . have been tested and proven of [sic] full-size equipment."[12] The June 1971 brochure included several pipe bend drawings, which Crippen acknowledged were made for him by a Tubeco

---

7. Affidavit of Allan B. Wesler (hereinafter "Aff. Wesler") dated July 25, 1973, par. 11.

8. Aff. Wesler, Exh. PDX–18.

9. The New York corporation was merged into the present co-defendant, a Delaware corporation, on July 12, 1972. The principal place of business of both corporations was and is in Brooklyn, N.Y. Aff. Crippen, par. 2.

10. As one of 21 companies listed by the industry's trade association, the Pipe Fabricating Institute. See Exh. PDX–5 dated June 1971, at p. 1, Pl.Exhs. Appended to Memo., etc.

11. Exhs. PDX–5 at p. 1 and PDX–28 at p. 1, Exhs. Appended to Memo., etc.

12. Exhs. PDX–5 and 28, supra, at p. 2.

draftsman just prior to his leaving Tubeco's employ in 1966.[13]

Crippen succeeded in launching his enterprise on October 31, 1972. On that date Crippen Pipe signed a lease for manufacturing buildings and facilities at the Brooklyn Navy Yard, having obtained substantial financing from a banking and investment consortium and firm sales commitments from a number of major industrial corporations.[14] The event received local news publicity which came to Tubeco's attention. In mid-February 1973, just as Crippen's enterprise was getting under way,[15] this action was commenced.

## DISCUSSION

Although it is Crippen's motion which calls into question the court's subject matter jurisdiction, it is Tubeco's burden to demonstrate that this is a case involving a federal question, or the patent laws or a cognizable claim under the Lanham Act. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). The Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, does not of itself confer subject matter jurisdiction but only a remedy where such jurisdiction independently exists. *Sachs v. Cluett, Peabody & Co.*, 91 F.Supp. 37 (S.D.N.Y.1950). There being no diversity of citizenship between the parties and no apparent federal question apart from the patent laws and the Lanham Act, subject matter jurisdiction must rest upon the existence of either an actual patent controversy or a cognizable claim under the Lanham Act.

*Patent Controversy*

Tubeco's first alleged cause of action mingles two separate claims: (a) a claim of patent invalidity under 35 U.S.C. §§ 102, 103, and (b) a claim of unfair competition under 28 U.S.C. § 1338(b) based upon Crippen's alleged misuse of the patent. The latter is, of course, a claim wholly dependent for jurisdictional purposes upon the substantiality of the related patent invalidity claim.

The configuration of the patent claim has changed in important respects since defendants filed their motion to dismiss. Tubeco has abandoned its original allegations that Crippen directly or indirectly, expressly or impliedly—or even vicariously—threatened Tubeco or its customers with claims that "tribute" must be paid or infringement suits would follow. Exhaustive discovery by deposition and inspection has produced only repeated disclaimers by Crippen in the most unequivocal terms that (1) Crippen's patent has been infringed by Tubeco's methods of pipe bending; (2) Crippen has threatened or authorized anyone to threaten Tubeco with infringement; or (3) Crippen has accused or threatened any customer of Tubeco with infringement or suit. Indeed, the parties have stipulated for purposes of this motion that Tubeco

"shall not rely upon any such alleged conversations between plaintiff and its customers as evidence of plaintiff's apprehension that it or its customers would be sued for infringement of the Crippen patent, or as evidence that plaintiff or its customers would suffer loss of business or other economic harm as a result of the Crippen patent; plaintiff shall not rely upon any stated customer's apprehension that it would be sued for infringement of the Crippen patent as a basis for plaintiff instituting this lawsuit; and plain-

---

13. Crippen Dep., pp. 236–42, Pl.Exhs. Appended to Memo., etc. Crippen also testified that some of the slides he used in personal demonstrations to prospects, using a model of his patented apparatus, were derived from photographs of Tubeco's bending equipment and of distorted bends, which he and another employee took both before and after Crippen left Tubeco. *Id.* at pp. 318–19, 328, 332, 354–64, 382–84.

14. PDX–2, Pl.Exhs. Appended to Memo., etc.

15. See PDX–10, Pl.Exhs. Appended to Memo., etc., a news report on Crippen's progress which appeared in the AMM (American Metal Market) issue of February 13, 1973.

tiff shall not rely on the alleged fact that such conversations took place . . . ."[16]

As judge Frankel was moved to comment in a somewhat similar situation, "if plaintiff's concern arose only from its own prospective liability in a suit against itself by the present defendant, the motion to dismiss would have to be granted. For defendant's repeated and unambiguous disclaimers in support of the motion would surely protect plaintiff in the unlikely event of an attempt to retract them at some future time." *Wallace & Tiernan, Inc. v. General Electric* Company, 291 F.Supp. 217, 220 (S.D.N.Y.1968). Here, Crippen's disclaimers and the parties' stipulation would also seem to place the case beyond the periphery of "actual controversy."

What then is left of the patent claim? As far as the court can observe, Tubeco's claim reduces itself essentially to these admitted or asserted elements: (1) Crippen, as a former employee, had acquired detailed knowledge of Tubeco's pipe-bending techniques and took with him, when he left, some photographs and drawings (admitted); (2) Tubeco's established but unpatented commercial techniques are substantially identical to those described in the patent, indicating Crippen's failure to fully disclose the prior art to the Patent Office (asserted); (3) Crippen has made the patent the cornerstone of his new business and has in fact called on some of Tubeco's customers, advising them of the patent and seeking orders in competition with Tubeco (admitted); and (4) Tubeco provides its customers with save-harmless assurances against liability for claims of patent infringement (admitted). To these may be added Tubeco's own complaint allegation (par. 13) that Crippen's patent claims are *not* infringed by Tubeco's manufacture or sale of its hot-bent pipe or machines, nor by its customers who use Tubeco hot-pipe bending services.

There is no precise test for determining the existence of an actual patent controversy. "The difference between definite, concrete and substantial controversies which are justiciable, and hypothetical, abstract, or academic ones which are not justiciable, is one of degree, to be determined on a case by case basis." *Muller v. Olin Mathieson Chemical Corporation*, 404 F.2d 501, 504 (2 Cir. 1968). Some rules have developed, however, which aid the process of recognition. A plaintiff need not be charged with infringement or threatened with an infringement suit, either directly or indirectly. *Id.* Indeed, even a disclaimer by the defendant patentee that such a charge will never be made against the plaintiff does not obviate an actual controversy if the defendant's patent conduct vis-à-vis licensees, who are also plaintiff's customers, concretely threatens plaintiff's business. *Wallace & Tiernan, Inc. v. General Electric Company, supra*, at 221. And more recently it has been suggested that "any lingering possibility of an infringement charge is sufficient to support the finding of an actual controversy so long as the plaintiff can demonstrate *some actual harm* to its business." *Blessings Corporation v. Altman*, 373 F.Supp. 802, 806 (S.D.N.Y.1974) (emphasis supplied).

For purposes of this case, however, a more useful touchstone for determining whether an actual controversy exists is the "reasonable apprehension" formulation found in *Japan Gas Lighter Association v. Ronson Corporation*, 257 F.Supp. 219 (D.N.J.1966). As the court there expressed it,

"an action must be based on the plaintiff's well grounded fear that should he continue or commence the activity in question, he faces an infringement suit or the damaging threat of one to himself and his customers. The touchstone is a *reasonable apprehension*. . . . some concrete indication that the defendant patentee

16. See Stipulation and Order approved by the court March 15, 1974.

claims the plaintiff's activity infringes his patent, and also that he will act affirmatively to enforce the protection which he claims.

"On the one hand, neither academic interest nor cautious speculation will suffice. 'The mere existence of the [defendant's] patent is not a cloud on title enabling any apprehensive manufacturer to remove it by suit.' . . . The plaintiff's fearful conjecture that at some future time the defendant may initiate infringement proceedings will not support the suit." 257 F.Supp. at 237 (citations omitted; emphasis in original).

█ Tubeco's president avers he "authorized the bringing of this action to foreclose any possible suits by Crippen against either Tubeco or its customers and to foreclose any threats against customers."[17] A searching examination of the extensive record reveals not the slightest support for such an apprehension. As previously noted, "fearful conjecture" as to future infringement proceedings does not create a present controversy.

Nor does the former employer-employee relationship between Tubeco and Crippen, or the asserted identity between the patented invention and Tubeco's process, or the subsequent contacts between the parties—even when viewed together—constitute the type of historical relationship which evinces the reality of the asserted controversy. There is no reasonable basis in the record for any suggestion of adverse interest or difference between the parties—that is, not until Tubeco itself sought to place a chip on Crippen's shoulder and knock it off.

█ Tubeco conceded that Crippen made no threats.[18] The testimony and documentation relating to Crippen's prior contacts with Tubeco suggest no more than a logical and friendly approach by a former employee to a former employer whom he wished to interest in what he thought to be cost-saving improvements in the employer's methods. That he did so with the expectation of payment, if the ideas were accepted, is not a basis for concluding in retrospect that litigation was to be feared if they were not. Crippen's approach was at most the offer of a patent license, not an invitation to a patent contest which would warrant declaratory relief. See *Alamo Refining Co. v. Shell Development Co.*, 99 F.Supp. 790 (D.Del.1951).

█ Tubeco's claim is patently a contention that the invention embodied in the Crippen patent was stolen from Tubeco, that fraud was perpetrated in obtaining its issuance, and that misrepresentations were made in Crippen's attempts to exploit it. This accounts for the detailed exploration in the record of Crippen's knowledge of Tubeco's processes and apparatus, his obtaining of photographs and drawings even after he left Tubeco, and the extensive review of correspondence, brochures, reports and contacts with companies whom Crippen sought to interest as prospective licensees or potential customers for pipe bending services after Tubeco turned him down. It also explains the detailed analysis of the patent in comparison with Tubeco's processes. There may or may not be merit in such a claim, see 2 Callman, Unfair Competition, Trademarks and Monopolies §§ 52.2, 54.2, 54.-2(a) and (b) (3d ed. 1968), but it is not one which may be litigated here.

█ To the extent that fraud on the Patent Office in the procurement of the patent is claimed, Tubeco has no standing to sue at all. Only the United States is authorized to maintain a proceeding to *obtain cancellation* of a patent obtained from it by fraud. *United States v. American Bell Telephone Co.*, 128 U.S. 315, 9 S.Ct. 90, 32 L.Ed. 450 (1888). See also, *Eckert v. Braun*, 155 F.2d 517 (7 Cir. 1946); *Howard v. Archer*, 115 F.2d 342 (9 Cir. 1940); *Mirarchi v. Porter*, 355 F.Supp. 330 (D.

---

17. Aff. Wesler, par. 15.

18. Pl.Memo. in Opposition, etc., pp. 10–11.

Mass.1973); *Sachs v. Cluett, Peabody & Co., supra.*

To the extent that Tubeco asserts any rights in the patented invention,[19] the gravamen of the claim would be breach of the contract of employment. Diversity of citizenship, lacking here, would be required to prosecute such a claim in a federal court. See, *e.g., Jamesbury Corporation v. Worcester Valve Company,* 443 F.2d 205 (1 Cir. 1971). That would also be the case if the claim is construed as a charge of unfair competition. See n. 19 *supra.*

In sum, Tubeco has wholly failed to satisfy its burden of showing a reasonable apprehension that the Crippen patent or its use poses a concrete threat of harm to Tubeco or its customers. Indeed, the convincing evidence is to the contrary. Tubeco, as one of approximately six leading sources of hot bent pipe in the United States,[20] has been in that business for upwards of 24 years.[21] Using wholly unpatented processes, it has successfully serviced the needs of a national clientele of sophisticated industrial corporations which are allowed to view its operations without restriction and, indeed, must approve the facilities before placing pipe fabrication orders.[22] Tubeco alleges that neither it nor its customers infringe the Crippen patent and Crippen agrees that Tubeco's present processing methods and equipment do not infringe the patent. The

asserted patent controversy is wholly hypothetical and speculative and not justiciable. Tubeco's first cause of action must therefore be dismissed for lack of jurisdiction over the subject matter.

*Lanham Act Claim*

Tubeco's second cause of action seeks to invoke federal jurisdiction on the basis of alleged violations by Crippen of the prohibitions contained in the Lanham Act, 15 U.S.C. § 1125.[23] In substance, Tubeco alleges that Crippen sought to exploit his patent in interstate commerce with knowledge that Tubeco was the true developer of the process and apparatus embodied therein, and did so with accompanying photo slides and drawings derived from Tubeco, and using a model which visually illustrated the nature of the patented process. These acts, it is contended, are within the spirit and scope of the Lanham Act and constitute "a false and material description or representation" in the solicitation and sales of goods and/or services in interstate commerce. Tubeco also alleges that the use of the patent falsely suggests exclusivity and is therefore "a false designation of origin" within the meaning of the Act.

Crippen maintains that Tubeco's allegations simply do not set forth the particular kind of unfair competitive activity at which the Lanham Act is directed. In order to state a claim under the Act, Crippen argues, § 1125 requires the use

---

19. This would certainly appear to be the thrust of Tubeco's claim as reflected in the statement of its president that "it was plain to me that his [Crippen's] new business was being founded on a misrepresentation of ownership as to the patented subject matter." Aff. Wesler, *supra,* par. 14.

20. Wesler Dep.Tr. 30–31.

21. Pl.Memo. in Opposition, etc., p. 4.

22. Wesler Dep.Tr. 70–71, 105.

23. The Lanham Act provision relied on reads:
    "§ 1125. False designations of origin and false descriptions forbidden
    "(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of

origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

of a false designation of origin, or a false description or representation in advertising goods or services and acts causing them to enter commerce. Neither element, says Crippen, is present here. There can be no "falsity" about the patent; its existence is a fact and by law it must be presumed valid until its invalidity is established by a party contesting it, 35 U.S.C. § 282, and the Lanham Act does not provide a jurisdictional basis for such a contest. Moreover, Crippen argues, up to the time of the filing of the complaint, it is undeniable that no goods relating to the patent had either been manufactured or shipped in interstate commerce.

▇▇▇▇▇▇▇ Viewing the Lanham Act claim in light of the probative facts upon which Tubeco relies, the second cause of action is clearly beyond the purview of the Act. Whether or not the patent describes Tubeco's unpatented pipe bending apparatus and process in whole or in part, it is a presumptively valid patent issued to Crippen. In no way is the patent so identified with Tubeco or its products as to create a false impression in the trade that Crippen is now the exclusive source or origin of hot pipe bending services previously supplied by Tubeco. Indeed, as already noted, Tubeco claims its processes do not infringe the patent and Crippen agrees, a consensus suggestive of difference rather than identity between their respective processes. Crippen's communications or negotiations regarding the patent with prospective licensees, sources of financing, or prospective customers for pipe bending services, as reflected in the record, are in no sense the false advertising at which the Lanham Act was aimed. To paraphrase Judge Friendly's comment in an analogous situation, "[s]ection 43(a) [§ 1125(a)] is intended to reach false advertising violations",

not false patent claims. See *La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1270 n. 6 (2 Cir. 1974) (claim that defendant "falsely represented that it [was] possessed of the right [under its allegedly invalid trademark registration] to prevent the importation into the United States of the plaintiff's perfumes" held not within § 1125(a)).

Even though the Lanham Act supports a broad view of misrepresentations within its reach, it is clearly directed only against the "false representation of goods or services in interstate commerce." 1 Callman, Unfair Competition, Trademarks and Monopolies, § 18.-2(b)(2) at 621 (3d ed. 1967). The brochures, reports, photos, drawings and model relied on by Tubeco are neither misrepresentations nor "goods'" within the meaning of the Act, even applying the liberal reading found in some of the cases cited by Tubeco.[24]

The assorted photos of pipe-bending dies or other apparatus found in the record are clearly not assimilable to "catalogs" containing photographs, descriptions or listings of articles being offered for sale as was the case in *N. S. Meyer, Inc. v. Ira Green, Inc.*, 326 F.Supp. 338, 340 (S.D.N.Y.1971), and *American Optical Company v. Rayex Corporation*, 291 F.Supp. 502, 504 (S.D.N.Y.1967). Neither Tubeco nor Crippen sell the apparatus or equipment by means of which hot pipe bending is accomplished. For the same reason, the model of the apparatus described in Crippen's patent cannot be placed in the same category as advertising for simulated mink fabric, stock certificates, advertising surveys, or a signal light at a trade show. The model was itself not illustrative of the article or service being offered for sale. And finally the three drawings in the Crippen brochure [25]—admittedly drawn by a

24. See *Mutation Mink Breeders Ass'n v. Lou Nierenberg Corp.*, 23 F.R.D. 155 (S.D.N.Y. 1959); *Midwest Packaging Materials Co. v. Midwest Packaging Corp.*, 312 F.Supp. 134 (S.D.Iowa 1970); *Glenn v. Advertising Publications, Inc.*, 251 F.Supp. 889 (S.D.N.Y.

1966); *Crossbow, Inc. v. Glovemakers, Inc.*, 265 F.Supp. 202 (N.D.Ill.1967).

25. See Pl.Exh. PDX–4, Pl.Exhs. Appended to Memo., etc.

Tubeco draftsman—merely illustrate multiple pipe bends of varying shapes which it was claimed could be accomplished by the Crippen method without undesirable welds and in less time than by conventional equipment. Again, no article was represented as an item or service for sale.

The "goods or services" here involved is hot bent pipe, not a patent or the method by which the ultimate product is turned out. It is undeniable that prior to the filing of this action Crippen had made no sales of goods or services in interstate (or even intrastate) commerce involving the practice of any process embodied in the patent. There has thus been no actual misuse of any "distinguishing characteristic" of Tubeco's assertedly unique processes or products. *Cf. Geisel v. Poynter Products, Inc.,* 283 F.Supp. 261, 267 (S.D.N.Y.1968), and cases therein cited. And for the same reason there has been no satisfaction of the essential Lanham Act requirement that "the goods upon which the false designation appears" enter into interstate commerce. *Blazon, Inc. v. DeLuxe Game Corp.,* 268 F.Supp. 416, 428–29 (S.D.N.Y.1965).

The actual or potential customers for hot bent pipe are admittedly large industrial users, certainly as sophisticated in their purchasing procedures as the advertising buyers in *Glenn v. Advertising Publications, Inc.,* 251 F.Supp. 889 (S.D.N.Y.1966). The brochures, reports, photographs, drawings and model relating to a process for hot pipe bending, relied on as false representations, to use the words of Judge McLean, "do not add up to the kind of misrepresentation which I believe the Lanham Act was intended to cover." See *id.* at 904. Tubeco's second cause of action therefore fails to state a claim for relief.

Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction over the first cause of action and failure to state a cognizable claim under the Lanham Act in the second

cause of action is accordingly granted in all respects.

So ordered.

The Clerk of the Court is directed to enter judgment in favor of the defendants and against the plaintiff dismissing the complaint.