AIRSHIP INDUSTRIES (UK) LTD. and
Airship Industries (USA),
Inc., Plaintiffs,

v.

The GOODYEAR TIRE & RUBBER
COMPANY, Defendant.

No. 86 Civ. 1707 (RWS).

United States District Court,
S.D. New York.

Aug. 8, 1986.

Reid L. Ashinoff, Ashinoff, Ross & Goldman (Michael H. Barr, of counsel), New York City, Richard H. Stern, Washington, D.C., for plaintiffs.

Cahill Gordon & Reindel, P.C., New York City (Marshall Cox, Alan B. Loughnan, Stephen Weiner, David Wagner, of counsel), for defendant.

SWEET, District Judge.

Defendant, The Goodyear Tire & Rubber Company ("Goodyear"), has brought a motion pursuant to Rule 12, Fed.R.Civ.P., to dismiss the complaint filed by plaintiffs Airship Industries (UK) Ltd. and Airship Industries (USA), Inc. (collectively "Airship"). For the following reasons the motion will be denied in part and granted in part.

**The Parties**

Airship designs, manufactures and operates lighter-than-air "airships," also commonly known as "blimps." During the 1980s, blimps produced by Airship have been used for a variety of commercial and military purposes. A significant portion of Airship's business is the lease or sale of blimps to other companies for use in aerial advertising and related print, media and other advertising depicting blimps. Citi-

bank, Resorts International, Fuji, The Swan Brewery Company Limited, Pan Am and British Caledonian Airlines have all promoted and advertised their services and goods in the United States and other countries by means of airships produced and operated by Airship Industries. Airship Industries blimps have flown throughout the continental United States and have appeared at the 1984 Olympic Games, Rose Bowl, the Rose Bowl Parade, the Farm Aid Concert, the New York City Marathon, the Boston Marathon and various baseball games. In addition to engaging in direct aerial advertising on airborne blimps, these firms have engaged in related advertising and promotional activities, including advertisements in print, the media and point-of-purchase displays showing photographs, pictures or other depictions of these airships promoting the companies and their products ("secondary advertising").

Airship promotes its blimps to prospective customers by the benefits resulting from not only the display of their company logo and products on airborne blimps, but also the depiction of their products in association with blimps in secondary advertising. The relationship between aerial and secondary blimp advertising is reflected in the contracts between Airship and its customers. For example, the contract pursuant to which Fuji is using the airships states:

> [Airship] hereby authorizes Charterer's and/or Charterer's clients [i.e., Fuji] pursuant to Charterer's request to photograph and film the Airship and Airship's crew for the purpose of utilizing same for Charterer's advertising and promotion purposes only.

Goodyear has been operating blimps since 1919 and currently operates three blimps in the United States which each travel approximately 100,000 air miles each year. Although at one time Goodyear chartered its blimps to other advertisers, since 1955 Goodyear has refused all requests from other companies to purchase or rent blimps. Goodyear spends approximately $10 million, or one-fourth of its

annual advertising budget, maintaining and promoting its blimps. In addition, Goodyear utilizes the depiction of a blimp as a trademark in connection with its advertising, promotion and sale of goods. The design of the blimp alone and in conjunction with the Goodyear name has been registered with the United States Patent and Trademark Office.

**Related Proceedings**

Recently, Goodyear filed two civil actions in Florida and Nebraska against one of Airship's customers seeking damages and injunctive relief based on these states' anti-dilution statutes. The Florida action was filed on December 20, 1985 in a circuit court of the State of Florida against Fuji. This action was subsequently removed to the federal district court on the basis of diversity of citizenship and it is anticipated that a motion by Fuji to transfer to this district may be resolved in the near future.

Goodyear's single claim for relief in that action arises under the Florida Anti-Dilution Statute, Fla.Stat.Ann. § 495.151 (West 1972), which provides:

> Every person, association, or union of workingmen adopting and using a mark, trade name, label or form of advertisement may proceed by suit, and all courts having jurisdiction thereof shall grant injunctions, to enjoin subsequent use by another of the same or any similar mark, trade name, label or form of advertisement if it appears to the court that there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark, trade name, label or form of advertisement of the prior user, notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services.

Goodyear alleges that Fuji has promoted its products through a "Play Blimpo" game or bonus promotion in which Fuji distributes "Play Blimpo" cards utilizing the shape and symbol of a blimp as a prominent element in the design of the card. Goodyear claims that "the continued use of the shape and symbol of a blimp in Fuji's and Fuji U.S.A.'s print and media advertis-

ing and in point-of-purchase marketing and promotion by Fuji ... is likely to injure the business reputation of Goodyear, ... is likely to dilute the distinctive quality of Goodyear's blimp trademark" and "may cause Goodyear's blimp trademark to lose its distinctiveness entirely and destroy the advertising value of Goodyear's blimp trademark." Goodyear asks for damages and an injunction prohibiting use of "the shape and symbol of a blimp, or depiction of a blimp in the printed advertising, broadcast media advertising, point-of-purchase marketing and promotional materials and any other advertising and promotional materials." Goodyear has not sought to enjoin Fuji from buying or leasing blimps from Airship or others or from using blimps as "flying billboards" to carry Fuji's name or advertising.

The Nebraska action was filed by Goodyear on the same day, December 20, 1985 in the United States District Court for the District of Nebraska. It contains the same factual allegations, including the allegations regarding the "Play Blimpo" promotion, but sets forth two counts, both arising under statutes of the State of Nebraska. The first count alleges a violation of the Nebraska Anti-Dilution Statute, Neb.Rev.Stat. § 87–122 (1981), which provides:

> Likelihood of injury to business reputation of or dilution of the distinctive quality of a trademark ... valid at common law, shall be a ground for injunctive relief not withstanding the absence of competition between the parties or the absence of confusion as to the source of goods.

Goodyear alleges that "the use of the shape and symbol of a blimp" in Fuji's "print and media advertising and in point-of-purchase marketing and promotion" is likely to injure Goodyear's business reputation, dilute the distinctive quality of its blimp trademark, and destroy the advertising value of the blimp trademark.

Goodyear's second count alleges a violation of the Nebraska Deceptive Trade Prac-

tice Statute, Neb.Rev.Stat. § 87–302 (1981), which provides:

> (a) A person engages in a deceptive trade practice when in the course of his business, vocation, or occupation, he ... (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another ...

Goodyear alleges that Fuji's use of "the shape and symbol of a blimp in its print and media advertising and promotion activities and in its point-of-purchase marketing and promotional materials is likely to cause confusion or misunderstanding as to affiliation, connection or association with or certification by Goodyear."

The injunction sought in the Nebraska action is the same as that requested in the Florida action. Again Goodyear does not seek to enjoin Fuji from buying or leasing blimps or from using blimps as "flying billboards" carrying Fuji's name or advertising. Goodyear seeks only to prevent Fuji from using the "shape and symbol of a blimp" in print, media and point-of-purchase advertising and promotional materials of the blimp shape and symbol dilutes the value of Goodyear's trademarks. The Nebraska action has recently been transferred to this court pursuant to 28 U.S.C. § 1404 and assigned to another member of this court.

**The Complaint**

In this action Airship seeks to enjoin Goodyear from prosecuting its actions against Fuji in Florida and Nebraska and to enjoin Goodyear from suing Fuji or any other as yet unidentified customer of Airship under the Florida and Nebraska anti-dilution statutes or any other state anti-dilution statute to protect its trademark rights in the shape and symbol of a blimp. Airship also seeks a declaratory judgment that Fuji and other Airship customers are not violating the Florida and Nebraska anti-dilution statutes or any of the twenty or more other state anti-dilution statutes and that the Florida and Nebraska statutes are unconstitutional and preempted by federal law if applied as Goodyear seeks to

apply them. In addition to the two pending actions cited above, Airship refers "on information and belief" to alleged threats by Goodyear against other unidentified "actual or prospective" customers of Airship as presenting the basis of the present case.

Airship has set out nine separate counts grounded on Goodyear's two suits against Fuji. Under each count Airship's asserted injury is the possibility that Fuji or other customers may decide not to buy or lease blimps from Airship if they are prevented from engaging in print, broadcast media or point-of-purchase advertising which Goodyear alleges dilutes its blimp trademarks. Airship does not claim that Goodyear has threatened or implied any possible legal action against it or that Airship itself faces any potential liability for trademark infringement under any state anti-dilution act.

More specifically, the nine counts in Airship's complaint allege the following claims for relief. In Count One, Airship seeks a declaratory judgment that neither it nor any of its customers have violated the Florida, Nebraska or any other state anti-dilution statute by permitting or engaging in blimp advertising. Airship does not specify the other states which have anti-dilution statutes but there are apparently about twenty such states.

The Second and Third Counts assert that if Goodyear prevails in its actions in Florida and Nebraska, the effect would be monopolization of blimp advertising (Second Count) or an attempt to monopolize "blimp advertising" (Third Count) in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 (1982). Airship thus seeks a declaration that the two state statutes, "as Goodyear seeks to apply them," are invalid under the Supremacy Clause of the United States Constitution and requests an injunction against the two pending actions or any similar lawsuit against any actual or potential customers of Airship.

The Fourth and Fifth Counts allege that the Florida and Nebraska statutes, "as Goodyear seeks to apply them," are unconstitutional because they impose an undue

burden on the interstate commerce in blimp advertising (Fourth Count) and infringe the First Amendment commercial free speech rights of Airship and its customers (Fifth Count).

The Sixth Count claims that the Nebraska and Florida statutes create the "substantial equivalent of copyright protection" and are preempted by federal copyright law. The Seventh and Eighth Counts are state law claims which charge that, by bringing the actions in Florida and Nebraska and by allegedly "threatening" other unnamed customers, Goodyear has tortiously interfered with Airship's contractual relations (Seventh Count) and has tortiously interfered with Airship's prospective business relations (Eighth Count). Finally, the Ninth Count states that Goodyear's actions constitute unfair competition under New York law.

**Discussion**

■ In its motion to dismiss, Goodyear asserts that Airship lacks standing to bring claims based on the legal rights of its customers. Although the present record does not suggest that Airship's customers are unable to press their own rights, *see Singleton v. Wulff*, 428 U.S. 106, 114–16, 96 S.Ct. 2868, 2874–75, 49 L.Ed.2d 826 (1976), Airship is in fact asserting its own legal rights and interests as well as protecting the interests of its customers. Airship has alleged that it will be injured if Fuji or other customers decide not to buy or lease blimps from Airship as a result of Goodyear's actions. This is sufficient to satisfy the "distinct and palpable injury" requirement of *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

Goodyear also asserts that the claims raised in Airship's complaint present no case or controversy under Article III of the Constitution and are therefore nonjusticiable. It is, of course, well-established that Article III precludes federal courts from rendering advisory opinions in the guise of declaratory judgments and thus this court may only adjudicate "concrete legal issues, presented in actual cases, not abstractions." *United Public Workers v. Mitch-*

*ell*, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947). The distinction between hypothetical questions and tangible controversies is "one of degree to be determined on a case by case basis." *Nippon Electric Glass Co. v. Sheldon*, 489 F.Supp. 119, 121 (S.D.N.Y.1980).

■ However, Goodyear's assertion that these claims are not yet ripe for adjudication because they are contingent upon an outcome in the Nebraska and Florida lawsuits unfavorable to Fuji misstates Airship's claim. Airship asserts that Goodyear's activities—including the commencement of the two pending lawsuits and other threats to Airship's customers—have a continuing effect on Airship's prospective and actual business. Airship claims that its customers will not use Airship's blimps if they know they will be faced with the expense of defending an anti-dilution action. Thus, Airship has claimed an immediate injury based on actions that have already been taken by Goodyear against customers who are now using Airship's blimps.

Similarly, these claims constitute an "actual controversy" under the Declaratory Judgments Act. The Declaratory Judgments Act provides that: "In a case or actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (1982). The Second Circuit has stated that declaratory judgments are appropriate only when there is an immediate dispute between the parties:

> Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

*Beacon Construction Co. v. Matco Electric Co.*, 521 F.2d 392, 397 (2d Cir.1975) (footnotes omitted).

The Declaratory Judgments Act is frequently invoked by a person threatened with a patent or trademark infringement action to obtain a declaration as to the validity of the patent or trademark:

> One who is subjected to charges of infringement and the threat of legal proceedings need not wait until his accuser chooses to bring suit to secure a determination of his rights. One of the purposes of the Declaratory Judgments Act is to avoid the unfairness of allowing one party to create a controversy by making such charges but, by withholding suit, to prevent the other party from conclusively refuting them.

*Topp-Cola Co. v. Coca-Cola Co.*, 314 F.2d 124, 125 (2d Cir.1963). Invoking this line of cases, Goodyear argues that there is no present controversy between itself and Airship because Goodyear has never threatened to sue it or accused it of impairing Goodyear's trademark rights. However, courts have frequently found the existence of an actual controversy where the defendant, although threatening the plaintiff's customers with legal action, had made no threat against the plaintiff and, in fact, had disclaimed any intention of bringing suit against the plaintiff.

In *Nippon Electric Glass Co. v. Sheldon*, 489 F.Supp. 119 (S.D.N.Y.1980), the manufacturer of a product for use in television picture tubes brought a declaratory judgment action against the owner of certain television tube patents following the receipt by the manufacturer's customers of letters alleging patent infringement. In denying the defendants' motion to dismiss for lack of a justiciable controversy, the court rejected the argument that no controversy existed so long as no threat of infringement had been made towards the manufacturer itself:

> The accusation need not be made directly to the declaratory judgment plaintiff, but may be made to its customers or to the industry at large ... When a patent

holder complains that a manufacturer's customers are guilty of direct infringement due to their use or sale of plaintiff's products, the patent holder is impliedly charging the manufacturer with contributory infringement as well ... As defendant himself points out, the modern test for the existence of an actual controversy in a patent case has been stated to be whether plaintiff has a reasonable apprehension of an infringement suit or threat of one to itself and its customers if plaintiff continues the activity in question.

489 F.Supp. at 121–22. Similarly, in *Blackman v. Hadron, Inc.*, 450 F.2d 781 (2d Cir.1971), the Court of Appeals held that there was a justiciable controversy between a supplier and a patent owner notwithstanding the fact that all infringement actions against the supplier's customers had been settled and, therefore, that no contributory infringement claims remained. As the Court stated:

> Quite apart from the threat of future litigation, the grievous effects of the unresolved charges of infringement already linger on: its past customers discouraged, and prospective customers intimidated, by the litigious atmosphere ..., Hadron finds itself without a market.

450 F.2d at 782–83.

■ Even assertions that Goodyear does not object to Airship's sale or lease of blimps and that there is no dispute between Goodyear and Airship are insufficient to deny the court jurisdiction of this suit. In *Wallace & Tiernan, Inc. v. General Electric Co.*, 291 F.Supp. 217 (S.D.N.Y.1968), the court denied a motion to dismiss despite the fact that the defendant announced "flatly and unequivocally" that it would never make charges against the plaintiff in the future. *Id.* at 220; *see also Tubeco, Inc. v. Crippen Pipe Fabrication Corp.*, 402 F.Supp. 838, 844 (E.D.N.Y.1975) ("Indeed, even a disclaimer by the defendant patentee that such a charge will never be made against the plaintiff does not obviate an actual controversy if the defendant's

patent conduct vis-a-vis licensees, who are also plaintiff's customers, concretely threatens plaintiff's business"), *aff'd*, 538 F.2d 314 (2d Cir.1976). The test is not whether a suit or threats will be brought against the plaintiff; rather, it is whether the plaintiff has a *"reasonable apprehension," Tubeco*, 402 F.Supp. at 844, that if he continues his actions his customers face the threat of suit. Where two suits have already been brought and plaintiff alleges that a third is threatened, a reasonable apprehension of suit does exist.

■ Although the "actual controversy" necessary to invoke the jurisdiction of the court under the Declaratory Judgments Act is present, this court nevertheless has discretion to decline to hear this case. *See Muller v. Olin Mathieson Chemical Corp.*, 404 F.2d 501, 505 (2d Cir.1968). The primary obstacle to entertaining this suit is the presence of two pending actions against Fuji in Nebraska and Florida. If these three suits involve identical issues, it would be a waste of judicial effort to determine issues that can be disposed of in a pending case. *See McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339 (9th Cir.), *cert. denied*, 385 U.S. 919, 87 S.Ct. 229, 17 L.Ed.2d 143 (1966). On the other hand, jurisdiction should not be declined merely because another suit is pending, if the controversy between the parties will not necessarily be decided in the pending suit. *See Yellow Cab Co. v. City of Chicago*, 186 F.2d 946, 950–51 (7th Cir. 1951).

■ An examination of the counts in Airship's complaint, however, discloses that several counts involve issues that will not necessarily be decided or entertained in the two pending suits. Counts Two and Three, alleging violations of the Sherman Act, and Counts Seven through Nine, alleging violations of state tort law, claim that the institution of the suits in Nebraska and Florida are elements of causes of action that are not necessarily based on the contention that anti-dilution statutes should not be applied to Fuji's actions. Therefore, this court will exercise jurisdiction over Counts Two, Three, Seven through Nine.

The other Counts in Airship's complaint involve issues more similar to those in the two Fuji cases, although the participants in the dispute are not the same. Each count is a defense to a charge of anti-dilution: Count One alleges that the customers' conduct did not violate any anti-dilution statute, and Counts Four through Six allege that the anti-dilution statutes are invalid for reasons of unconstitutionality and preemption. If these counts involve nothing more than is at stake in the pending suits, the Second Circuit's opinion in *Topp-Cola Co. v. Coca-Cola Co.*, 314 F.2d 124 (2d Cir.1963), counsels strongly against allowing their prosecution to proceed. In *Topp-Cola*, the plaintiff sought a declaration that it rightfully could register its trademark in Puerto Rico, an issue which was at the time under consideration in local Puerto Rico proceedings and opposed by the defendant. The Court there stated:

Apart from all this, it is clear that no useful purpose would be served by an adjudication in the district court of the plaintiff's right to registration in Puerto Rico or the defendant's right to oppose such registration. The plaintiff is not in the position of one who is threatened with legal proceedings but does not know when or where the blow will fall. The proceedings in Puerto Rico and the defendant's opposition are actual; the right of both parties will be determined in due course. The Declaratory Judgments Act may not be used simply to remove a controversy from a forum where it properly belongs.

*Id.* at 126; *see also Holiday Inns of America, Inc. v. Holiday House, Inc.*, 279 F.Supp. 648 (W.D.Pa.1968) (declaratory action inappropriate where there was pending a trademark infringement action by the defendant against plaintiff's licensee); *cf. TRW, Inc. v. Ellipse Corp.*, 495 F.2d 314, 322 (7th Cir.1974) (dismissal of declaratory action affirmed where manufacturer had opportunity to intervene in a prior suit against customer). Of course, the Goodyear action based on violation of the Ne-

braska statute is already in this court and presumably will be transferred as a related case after the filing of this opinion.

Further, Airship's allegations that Goodyear has threatened other actual or prospective customers of Airship with similar lawsuits suggest that there is something more to be gained in judicial economy by allowing this case to go forward. If, as Airship alleges, Goodyear is engaged in or plans to engage in a pattern of litigation with the intent to injure Airship, consideration of all these claims could be most efficiently undertaken in one lawsuit, rather than a multitude of proceedings in several different states against several different defendants. *See Lorenz v. F.W. Woolworth Co.,* 195 F.Supp. 719, 724 (S.D.N.Y. 1961) ("The purpose of the Declaratory Judgment Act is to ... avoid a multiplicity of suits"), *aff'd,* 305 F.2d 102 (2d Cir.1962). Airship should not have to wait until its other customers are sued to protect itself against injury. *Cf. Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). In addition, the national character of the dispute, stressed by the district court judge in Nebraska when transferring the Fuji case to New York, weighs in favor of considering all claims in only one proceeding.

At this time I decline to dismiss Counts One and Four through Six of the complaint in order to give Airship the opportunity to obtain reasonable discovery from Goodyear regarding Goodyear's course of conduct with respect to Airship's customers and the possibility of a larger threat of numerous time-consuming and expensive proceedings. In the event that such evidence is not forthcoming, Airship can intervene in the actions now pending to challenge the applicability and constitutionality of the Florida and Nebraska statutes and the disposition of those actions will be coordinated, if not consolidated, with the instant action. If the Florida action is not transferred to this district, a somewhat unlikely result under the present circumstances, any duplicative proceedings can be avoided by joint discovery and appropriate scheduling.

**State Law Claims**

Goodyear also seeks to dismiss the state law causes of action for failure to state a claim. Airship's Seventh Count alleges that Goodyear has tortiously interfered with the contractual relations between Airship and its customers. Since there is no allegation of any actual breach of contract by one of Airship's customers, this count depends upon the claim that Goodyear's actions have either made performance of a contract more difficult or lessened a party's enjoyment of the benefits of a contract. *See Goodall v. Columbia Ventures, Inc.,* 374 F.Supp. 1324, 1332 (S.D.N.Y.1974). Even under this expansive standard, Airship has failed to state a claim. The Seventh Count merely alleges that Goodyear's actions have prevented Airship's customers from "fully exploiting" their contractual rights. Only the party who has suffered a loss of benefits may bring an action for tortious interference with a contract. *Id.* at 1332 n. 33. Airship's interests are further removed since the threat of injury to its business will only be as a consequence of the lost benefits to its customers. Airship has not cited any authority for such an expansive definition of this cause of action, and the claim cannot proceed merely on a claim of consequential damages.

The Eighth Count differs from the Seventh by alleging tortious interference with prospective business relations. This claim properly relates to Airship's own interests in the consequences of Goodyear's present actions. Goodyear asserts, however, that Airship's pleadings are defective because they fail to allege that the defendant's sole motive was to inflict injury or that the defendant employed unlawful means to do so. The sole motive test does not reflect the current standard as enunciated by the New York Court of Appeals. In *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,* 50 N.Y.2d 183, 428 N.Y. S.2d 628, 406 N.E.2d 445 (1980), the court emphasized that liability for tortious interference with prospective business relations depended on proof of "more culpable con-

duct on the part of the interferer" but did not require that the defendant's sole motive be malice. Indeed, these elements should be considered in determining the liability of the alleged interferer: (i) whether the interference is intended to advance a competing interest; (ii) whether the interference has caused an unlawful restraint of trade, and (iii) whether the means employed were wrongful. 428 N.Y.S.2d at 632, 406 N.E.2d at 448. These issues may not be resolved merely on the basis of the absence of any allegation that malice was the sole motive of the defendant.

Airship has also adequately pleaded that Goodyear employed wrongful means of interference. Its allegations in this respect are that Goodyear instituted the Nebraska and Florida actions in bad faith and threatened similar suits in bad faith. The standard for proving such an allegation is, as Goodyear notes, very stringent. Restatement (Second) of Torts § 767, comment (1979) (litigation is "ordinarily wrongful if the actor has no belief in the merit of the litigation or if, though having some belief in its merit, he nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication"). Nevertheless, I conclude that the complaint's reference to Goodyear's bad faith is an adequate if brief reference to this element of the cause of action.

Finally, in its Ninth Count, Airship sets forth a conclusory allegation of unfair competition based on all of the acts of Goodyear. Although Airship cites to a commentary for the proposition that under New York law unfair competition may be based on any allegations that the defendant has acted unfairly in some manner, 60 N.Y. Law Trademarks § 64 at 88, the courts have been less expansive with this cause of action. In *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir.1980), the court explained:

> New York law in this area is indeed flexible, but it is not that flexible. The essence of an unfair competition claim

under New York law is that the defendant has misappropriated the labors and expenditures of another.

Airship has not alleged that Goodyear has misappropriated any of its business or property but asserted only that in its attempts to protect its own property, Goodyear has wrongfully prevented the expansion of Airship's business and the resulting competition. It is difficult to draw such a distinction in terms of unfair competition. In the absence of controlling authority holding that exclusion of a competitor from the market does not constitute unfair competition, the Ninth Count will not be dismissed.

### Conclusion

For the reasons set forth above, the clerk is directed to dismiss Count Seven of the plaintiff's complaint.

IT IS SO ORDERED.