**FIELD CONTAINER CO., L.P., Plaintiff,**

v.

**SOMERVILLE PACKAGING CORPORATION,**
**Defendant.**

**No. 93 C 3763.**

United States District Court,
N.D. Illinois, E.D.

Jan. 19, 1994.

Irwin C. Alter, Alter & Weiss, Chicago, IL, for Field Container Co., L.P.

Vasilios D. Dossas, John W. Chestnut, Tilton, Fallon, Lungmus & Chestnut, Chicago, IL, James J. Merek, David H. Voorhees, Shlesinger, Arkwright & Garvey, Arlington, VA, for Somerville Packaging Corp.

MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Field Container Co., L.P. brings this declaratory judgment action seeking a declaration of invalidity, unenforceability, and non-infringement as to U.S. Patent Nos. 4,756,470; 4,832,432; and 4,757,902. Presently before this court is defendant Somerville Packaging Corporation's motion to dismiss. For the reasons set forth below, Somerville's motion is granted.

## I. Background

Plaintiff Field Container Co., L.P. is an Illinois limited partnership with its principal place of business in Elk Grove Village, Illinois. It is the largest privately held manufacturer of paper cartons in the nation. In 1991, Field began to contemplate manufacturing reclosable one-half gallon ice cream cartons. According to Field, this subsection of the paper carton industry is essentially limited to five competing corporations, including defendant Somerville Packaging Corporation. Over the following two years, the technical design of the cartons involved in Field's "E–Z Dip" ice cream carton program changed and developed several times. At issue in the present action are essentially two versions of the E–Z Dip carton. The first was originally conceived of and committed to paper on August 6 or 7, 1992, and is labeled Field Spec. No. 4291 (hereinafter "Version 1"). The only apparent order of Version 1 was by Field itself, for the purpose of testing and qualification runs on a prospective customer's machines in January, 1993. Although Field remains able to manufacture Version 1, it has apparently neither solicited nor accepted any orders for Version 1, and it is not currently producing or exhibiting that carton. The second version at issue was

initially drafted on June 7, 1993, and is labeled Field Spec. No. 7223 (hereinafter "Version 2"). Orders for Version 2 were solicited prior to filing the lawsuit, and have presently reached close to one million cartons. In addition, Field exhibited Version 2 at a dairy supplier trade show held in October, 1993. Field has submitted working samples of each version with its materials in opposing the present motion.[1]

According to Field, the genesis for the current lawsuit was a letter sent to Field on June 15, 1993 by B. Edward Shlesinger, intellectual property counsel to Somerville Packaging Corporation. The text of the letter read as follows:

> We are intellectual property counsel to Somerville Packaging Corporation. Our client has an expansive patent portfolio relating to tamper evident, reclosable half-gallon ice cream cartons. Our client's patent portfolio includes U.S. Patent Nos. 4,752,902 ('902 patent); 4,838,432 ('432 patent); and 4,756,470 ('470 patent). A copy of each of these patents is enclosed for your review.

> It is our understanding that your company is presently testing a tamper evident, reclosable half-gallon ice cream carton very similar to our client's Tuck Tite® #2 and Tuck Tite® #3 cartons. It is our further understanding that your test samples are covered by the '470, '902 and '432 patents.

> We ask that you refrain from commercially exploiting ice cream cartons (i.e. manufacturing, selling or using) covered by our client's patents. Please advise us of your intentions to respect our client's pat-

ent rights at your earliest possible convenience.

> You should also be aware that our client has successfully enforced several of its patents directed to tamper evident, reclosable ice cream cartons and blanks. In this regard, we note that the '470 patent has been found valid, enforceable and infringed by cartons very similar in design to those of your test samples.

Somerville asserts that the letter was intended to refer solely to Version 1, as that was the only version of Field's carton that was being tested when the letter was sent, and the only version of which Somerville was aware. Indeed, Field has acknowledged that it was not testing Version 2 at the time it received the letter, and that it subsequently understood the letter to be referring only to Version 1. There was no further contact between the parties until June 23, 1993, less than one week after Field received Shlesinger's letter, when Field filed the current action. Somerville has moved to dismiss, asserting that this court lacks subject matter jurisdiction.

## II. Discussion

Under the Declaratory Judgment Act, 28 U.S.C. § 2201, a federal court may issue a declaratory judgment only if an "actual controversy" exists at the time the complaint is filed.[2] As a general rule, the complaint may simply allege facts sufficient to satisfy this prerequisite. However, when a defendant challenges the court's jurisdiction under the Act, the plaintiff has the burden of supporting the allegations with competent proof, and demonstrating by a preponder-

---

1. According to Donald Stonehouse, a structural designer at Field, there are essentially three differences between Version 1 and Version 2. First, the emboss present on the bottom end flaps of Version 1 were eliminated. Second, the zipper was redesigned. Although Version 1 incorporated a standard carton zipper, Field designed its own variation for use in Version 2. Finally, Field uses a different breakaway on each version; Stonehouse stated that the breakaway on Version 2 allows the cover to tuck in easier after the carton is opened. Stonehouse described this change as "significant."

2. The Declaratory Judgment Act reads, in relevant part:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201. The "actual controversy" requirement has been held to be a "jurisdictional prerequisite of constitutional dimension." *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979) (citing *Aetna Life Ins., Co. v. Haworth*, 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937)).

ance of the evidence the existence of an actual controversy.[3] *See International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir.1980); *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed.Cir.1992).

■ In declaratory judgment actions involving patents, two factors are necessary for a finding of "actual controversy." First, the plaintiff must demonstrate that, due to the defendant's actions, the plaintiff had a reasonable apprehension that it would be sued for infringement if it continued its activities. *International Harvester*, 623 F.2d at 1210. Second, the plaintiff must have actually produced or prepared to produce the item at issue, "such that 'but for a finding that the product infringes or for extraordinary and unforeseen contingencies, the plaintiff would and could begin production immediately.'" *International Harvester*, 623 F.2d at 1210–11 (quoting *Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc.*, 439 F.2d 871, 875 (1st Cir.1971) (footnote omitted)). We shall examine each of these prerequisites in turn.

## A. Reasonable Apprehension of Suit

■ As observed above, Field has the burden of demonstrating that Somerville's activities leading up to the filing of the lawsuit caused Field to develop a reasonable apprehension that it would face an infringement suit. To satisfy the "reasonable apprehension" requirement, however, Field need not demonstrate that Somerville made an express charge of infringement, or expressly threatened suit; rather, Field may satisfy this element by demonstrating the existence of an implied charge of infringement or a course of conduct by Somerville which would give rise to a reasonable belief that Field or its customers would be sued. *International Harvester*, 623 F.2d at 1211. That is, in the absence of an express charge of infringe-

ment, we will look to the "totality of the circumstances" in assessing the existence of a reasonable apprehension of suit. *See Shell Oil*, 970 F.2d at 888 (citation omitted). Among the factors typically considered by courts are "(1) a history of litigation between the same two parties, (2) threats or statements to customers, (3) suit against customer, (4) suits against others based on broad interpretation of patent, (5) general announcement published in trade paper, (6) an opinion by counsel for the patent owner, (7) assertions made during license negotiations or arbitration, and (8) suits abroad on analogous foreign patents." Donald S. Chisum, *Patents* § 21.02[1], at 21–37 to 21–38 (1993) (citations omitted). In addition, a plaintiff's failure to allege reasonable apprehension in its complaint is a factor which weighs against the plaintiff. *International Harvester*, 623 F.2d at 1211.

In the present action, Field has not alleged that Somerville leveled an express charge of infringement. We will therefore consider the totality of the circumstances, including those factors listed above, to determine whether Field fostered a reasonable apprehension of suit. We first observe that most of the above factors are not present here. There is no history of litigation between these parties, Somerville has not contacted any of Field's customers, and there have been no trade paper announcements, licensing negotiations or arbitrations, or foreign lawsuits. Furthermore, Field utterly failed to allege its "reasonable apprehension" in its complaint; instead, it has only raised this claim in response to Somerville's motion to dismiss.

■ Indeed, the only factor which even arguably supports a finding of reasonable apprehension is the letter to Field from Shlesinger.[4] We must initially consider which

---

3. In a traditional motion to dismiss, a court is limited to the face of the complaint. However, when a defendant challenges the existence of subject matter jurisdiction, the court is not bound to accept the allegations of the complaint is true; rather, the court may properly look beyond the complaint and consider any evidence submitted on the issue. *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979) (citations omitted).

4. Field also argues that Somerville's patent litigation with another competitor, Fold–Pak, Inc., supports its claims. However, Somerville maintains that that litigation is unrelated to the issues raised here, as it primarily concerns rightful ownership of various patents, and Field has acknowledged that it does not know the details of the Fold–Pak litigation. It is clear that litigation which is wholly unrelated to the issues presented here, even if generically called "patent litiga-

version(s) of the E–Z Dip cartons are potentially implicated by the Shlesinger letter. Somerville maintains that it was solely directed to Version 1, since that was the only version of which Somerville was aware at the time Shlesinger sent the letter. In addition, Somerville asserts that Versions 1 and 2 are significantly different, such that any fear of suit with respect to Version 1 could not automatically result in fear of suit with respect to Version 2. For its part, Field acknowledges that Version 2 was never "tested," so the letter's reference to a carton that was being "presently test[ed]" clearly precludes reference to Version 2. Indeed, Field later admitted that it was aware that the letter was, in fact, directed solely toward Version 1.

However, Field asserts that Versions 1 and 2 are similar enough that the letter clearly could apply to both versions, and, indeed, to any E–Z Dip carton that resembled those manufactured by Somerville. In essence, Field argues that it had a reasonable apprehension that Somerville would claim that the entire E–Z Dip "program" infringed its patents, and it refers to Somerville's characterizations of the differences between the versions as "twiddledum and twiddledee" arguments.[5] However, like the Cheshire cat, Field's arguments, though superficially appealing, ultimately lack substance. Contrary to Field's assertions, the evidence adduced by the parties indicates that the differences between the two versions are substantial, at least from an engineering standpoint. Perhaps the greatest support for this conclusion comes from Field's own design engineer, Donald Stonehouse. In his deposition, Stonehouse discussed the differences between the two versions, and concluded that at least one of the changes made was "significant."[6] For Field to now claim that these differences are "insignificant," in direct controversion of Stonehouse's deposition testimony, is at a minimum disingenuous. We reiterate that *Field* bears the burden of demonstrating an actual controversy, and conclude that the evidence simply does not support Field's assertions regarding the similarity, or lack thereof, between Versions 1 and 2. We are therefore unwilling to apply the transitive property and convert any "reasonable apprehension of suit" with respect to Version 1 to a "reasonable apprehension of suit" with respect to Version 2. As a result, we conclude that our consideration here is appropriately limited to Version 1.

At this point, we would typically consider whether the letter in fact created a reasonable apprehension of suit with respect to Version 1. We note initially that most cases in which courts find a reasonable apprehension demonstrate far more extensive and damaging activities by the defendant than present here.[7] The limited interaction be-

---

tion," cannot support Field's claim of reasonable apprehension of suit.

5. Indeed, Field has submitted to the court a sample of each version, asserting that "[t]he Court can see for itself that both [Version 1 and Version 2] are two very similar printed commercial E–Z Dip printed cartons."

6. Specifically, Stonehouse referred to the difference between the breakaway in Version 1 and the breakaway in Version 2 as "significant." In addition, he noted that Version 2 employed a zipper designed by Field, as opposed to the "standard" version which had been used on Version 1. Finally, the emboss present on the flaps of Version 1 was deemed unnecessary, and thus not included on Version 2.

7. In *International Harvester*, 623 F.2d at 1214, the Seventh Circuit made a similar observation, and concluded that the relatively limited factual situation precluded a finding of reasonable apprehension. The court stated:

In every case cited by [International Harvester] and in every case our research has disclosed, ... the facts upon which [International Harvester] relies here were only part of a far more extensive factual pattern giving rise to the plaintiff's reasonable apprehension. This extensive factual pattern is totally lacking in this case. [International Harvester] has established only that Deere's patent is the subject of another suit pending between the parties and that Deere, in response to an unsolicited demand for patent clearance, made one statement refusing to take a position and another, apparently oral, indicating that [International Harvester] could produce the CX–41 if Deere were paid an unspecified sum of money. Weighed against these facts are the absence of an explicit accusation of infringement, the absence of any contact between Deere and [International Harvester]'s customers and another, and [International Harvester]'s admission that it does not contend that Deere has in any way impaired its ability to sell the CX–41.

*International Harvester*, 623 F.2d at 1214.

tween these parties thus strongly suggests against a finding of reasonable apprehension of suit. We need not actually decide this issue, however, because it is readily apparent that Field cannot satisfy the second element of the "actual controversy" test with respect to Version 1.

### B. Production or Ability and Intent to Produce

While a declaratory judgment plaintiff need not have engaged in actual manufacture and sale of a potentially infringing product to obtain declaratory relief, it is well-established in the Seventh Circuit that, at a minimum, there must exist a "definite intention of the plaintiff to take immediate action with respect to the potentially infringing product...." *International Harvester,* 623 F.2d at 1215 (quotations omitted).[8] In *International Harvester,* the plaintiff sought a declaration that its model CX–41 corn head did not infringe a patent held by defendant Deere. At the time the suit was filed, International Harvester had developed a model of the CX–41, and had conducted both laboratory and field tests. However, International Harvester had not begun to solicit orders for the CX–41, in large part because it anticipated further testing and refinement of the CX–41 which could have resulted in design changes to the product. In finding that the second prong of the actual controversy requirement had not been met,[9] the court stated:

Our concern is not that the CX–41 will never be produced, but rather that because of the relatively early stage of its development, the design which is before us now may not be the design which is ultimately produced and marketed. For a decision in a case such as this to be anything other than an advisory opinion, the plaintiff must establish that the product presented to the court is the same product which will be produced if a declaration of noninfringement is obtained.

*International Harvester,* 623 F.2d at 1216.

The concerns expressed by the Seventh Circuit are equally applicable here. Although Field strenuously denies that it has "abandoned" Version 1, it nowhere states that it actually *intends* to produce and market that version of its E–Z Dip carton. On the contrary, there exists every indication that Field has chosen to go forward solely with Version 2. The only "purchase" of Version 1 was paid for by Field itself, and was made for the purpose of testing and qualification runs. Indeed, the changes subsequently made were, according to Stonehouse, a product of Field's dissatisfaction with certain elements of Version 1.[10] Since those tests, the only carton for which orders have been solicited, and the only carton which has been displayed for potential customers, is Version 2.[11] The evidence clearly demonstrates that Version 1 was a predecessor of, rather than a companion to, Version 2. It is therefore disingenuous for Field to suggest that because it *can* produce Version 1, it has demon-

8. Field's reliance upon the Federal Circuit's articulation of this prong is inapposite. The Federal Circuit has stated that "[p]laintiff must be engaged in actual making, selling, or using activity subject to an infringement charge or must have had meaningful preparation for such activity." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736 (Fed.Cir.1988) (citations omitted). The difference between the two tests with respect to a product not yet sold is clear: while both circuits require a showing that the plaintiff is prepared to produce and market the product at issue, the Seventh Circuit, unlike the Federal Circuit, explicitly requires that the plaintiff also possess *the intention* to commercially produce the product. As discussed further below, this distinction is crucial in the present case, and we are of course bound by the Seventh Circuit's recitation of the relevant legal standard.

9. The Seventh Circuit also found, in the alternative, that International Harvester had failed to demonstrate reasonable apprehension of suit. *International Harvester,* 623 F.2d at 1215.

10. *See, e.g., International Harvester,* 623 F.2d at 1216 ("The depositions indicate that where testing reveals a weakness or flaw in design, changes are made.").

11. We note that Field attempts to cloud the issue by stating that "the use of all the cartons on [customer Driggs'] machines led up to sales of close to a million cartons to Driggs." In fact, the only version of the cartons purchased by Driggs appears to be Version 2. Sales of Version 2, even if in the billions, in no way support a finding that Field intends to produce and sell Version 1.

344

strated an actual controversy. For Field to prevail, it must establish that it *will* produce Version 1, and this it has not done. Because Field has failed to carry its burden of demonstrating an actual controversy, this action is dismissed.

### III. Conclusion

For the reasons set forth above, defendant Somerville Packaging Corporation's motion to dismiss is granted. It is so ordered.