The DOW CHEMICAL COMPANY,
Plaintiff,

v.

VISKASE CORPORATION, Defendant.

No. 94 CV 6080.

United States District Court,
N.D. Illinois,
Eastern Division.

May 26, 1995.

Harry J. Roper, Steven Raymond Trybus, Sarah Lynn Taylor, Roper & Quigg, Chicago, IL, for plaintiff Dow Chemical Co.

Roy E. Hofer, William H. Frankel, Robert W. Stevenson, Willian Brinks Hofer Gilson & Lione, Chicago, IL, for defendant Viskase Corp.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

The Dow Chemical Company (Dow) brings this action against Viskase Corporation (Viskase) seeking a declaratory judgment that seven of Viskase's patents either are invalid or are not infringed by Dow or its customers. Viskase has moved to dismiss the complaint, arguing that this court lacks subject matter jurisdiction. For the reasons set forth below, the motion is granted.

### FACTS [1]

Among Dow's products are various families of ethylene polymers, including the Attane family and several families created using Insite Technology, including the Affinity family. Dow's customers use these polymers to create assorted end products, including thermoplastic single-layer and multi-layer films used in packaging. At issue here are certain packaging films known as biaxially-stretched shrink films.

Viskase makes and sells its own line of single-layer and multi-layer films formed into bags for the packaging of food. These include biaxially-stretched shrink films. Viskase owns seven patents for biaxially-stretched shrink films made from very low density polyethylene (VLDPE).[2] Viskase previously sued Cryovac, one of Dow's major customers, on five of the seven patents, and that case was settled out of court. While the terms of the settlement agreement are confidential, Dow believes that the agreement requires Cryovac to disclose any new biaxially-stretched shrink films it produces. Once it does so, Viskase must announce whether it considers such films to infringe on its patents.

In part because of the Cryovac–Viskase litigation, Dow has worked with Cryovac to develop an Insite Technology polymer that both believed could be used to make biaxially-stretched shrink film that would not infringe Viskase's patents. Dow claims it helped Cryovac so that Dow could recover the sales business it lost as a result of the Cryovac–Viskase lawsuit.

Cryovac made bags from the biaxially-stretched shrink film Dow developed after the Cryovac–Viskase litigation. Dow believes that when those bags were submitted for review under the settlement agreement, Viskase challenged them, claiming that they infringed its patents.[3]

1. In ruling on a motion to dismiss for lack of subject matter jurisdiction, we may consider not only the facts alleged in the plaintiff's well-pleaded complaint, but also any other evidence submitted on the issue. *Field Container Co. v. Somerville Packaging Corp.*, 842 F.Supp. 338, 341 n. 3 (N.D.Ill.1994). The plaintiff "has the burden of supporting the allegations with competent proof, and demonstrating by a preponderance of the evidence the existence of an actual controversy." *Id.* at 340–41.

2. The patents are Nos. 4,863,769; 4,976,898; 5,059,481; 5,256,351; 5,256,428; 4,863,784; and 4,988,465.

3. Dow believes that the seven patents at issue here are the same ones underlying Viskase's infringement allegation because Viskase called the patents its "VLDPE film patents" and based on subject matter, that term includes the patents at issue here.

American National Can Co. (ANC) is Dow's other major film-making customer. In 1994 Viskase sued ANC, alleging that ANC infringed the seven patents at issue here by making biaxially-stretched shrink film using Dow's Attane polymer. Dow worked with ANC to help ANC produce bi-axially-stretched shrink film based on its Affinity polymer that does not infringe on Viskase's patents. Viskase has not claimed that the Affinity-based film infringes its patents, but Dow believes (based on the Cryovac suit) that Viskase will do so.

In addition to ANC and Cryovac, Dow has other customers and prospective customers with whom it is working to design polymers which can be used to make biaxially-stretched shrink film. At least one of those customers has sought Dow's assistance in avoiding infringement on the Viskase patents and has sought indemnification from Dow against any charge of infrigement made by Viskase.

Based on the above facts, Dow claims that Viskase believes that Cryovac, ANC, and other Dow customers who make biaxially-stretched shrink films have infringed its patents and intends to enforce its patents against them. Dow also believes that Viskase will sue Dow for inducing its customers to infringe the patents. It therefore seeks a declaratory judgment that Viskase's patents either are invalid or are not infringed by biaxially-stretched shrink film whose polyethylene component is one of Dow's Affinity or Insite Technology polymers. Viskase has moved to dismiss Dow's complaint, arguing that this court lacks subject matter jurisdiction because the complaint raises no case or controversy.

### DISCUSSION

The Declaratory Judgment Act (the Act) permits federal courts to "declare the rights and legal obligations of an interested party '[i]n a case of actual controversy.' 28 U.S.C. § 2201. The Act enables a person who is reasonably at legal risk because of an unresolved dispute to obtain judicial resolution of the dispute without having to wait for commencement of litigation by the other side." *Applexion S.A. v. The Amalgamated Sugar*

*Co.*, No. 95 C 858, 1995 WL 229049, at *3 (N.D.Ill. Apr. 17, 1995).

The Act's only jurisdictional requirement is that there be an "actual controversy" between the parties. *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). The main issue here is what constitutes an actual controversy—specifically, whether a raw materials manufacturer can sue a patentee for declaratory judgment based on the activities of customers who use its raw materials to create potentially infringing products.

The actual controversy test has two core elements: the plaintiff must allege (a) "acts of [the] defendant indicating an intent to enforce its patent" and (b) "present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 737 (Fed.Cir.1988); *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed.Cir. 1993). The first element depends on the conduct of the patentee; the second refers to the conduct of the asserted infringer. *BP Chemicals*, 4 F.3d at 978. The parties do not dispute that Viskase has acted to enforce its patents against ANC and Cryovac and that it intends to continue to enforce its patents, nor do they dispute that ANC and Cryovac are engaged in activity that could constitute infringement. But ANC and Cryovac are not the plaintiffs, Dow is. Thus the questions here are whether (a) Viskase's threats against Dow's customers and (b) the customers' filmmaking activities are sufficient to establish an actual controversy between Dow and Viskase.

Dow alleges that Viskase could seek to hold it liable for direct infringement, contributory infringement, or inducing others to infringe. *See* 35 U.S.C. § 271(a)–(c) (describing the three causes of action for patent infringement). We address each of these causes of action, taking the latter two first.

Contributory infringement "requires that plaintiff establish (1) that defendants sold a material to be used in a patented process; (2) that said material constituted a material part of the patented process; (3) that defen-

dants knew the material to be especially adapted for use in the infringement of such patent; and (4) that the material did not constitute a staple article suitable for substantial noninfringing use." *Sing v. Culture Products, Inc.*, 469 F.Supp. 1249, 1254–55 (E.D.Mo.1979) (citing *Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964)); *see also* 35 U.S.C. § 271(c). Inducement to infringe, on the other hand, requires that "defendant purposely caused, urged or encouraged another individual to infringe plaintiff's patent ... 'with knowledge of the likely infringing result.'" *Sing*, 469 F.Supp. at 1254 (quoting *Burlington Industries, Inc. v. Exxon Corp.*, 379 F.Supp. 754, 757 (D.Md. 1974)); *see also Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1142 (7th Cir. 1975); 35 U.S.C. § 271(b). Dow claims that because it supplied ANC, Cryovac, and other customers with polymers it knew would be used to make biaxially-stretched shrink film and actively worked with its customers to create products that would compete with Viskase's, it could be held liable under § 271(b) or (c).

■ We need not decide whether Dow's activities could constitute contributory infringement or inducement to infringe because we find that Dow has no reasonable apprehension of suit based on these causes of action. In a letter dated November 1, 1994, Viskase represented that it "releases and will not sue Dow under the patents in suit so long as Dow does not manufacture, use or sell heat-shrinkable, biaxially stretched films using Attane or Affinity resin, or any other very low density polyethylene." Under Federal Circuit precedent, such a statement of nonliability "forever estop[s]" Viskase from asserting the claims covered therein against Dow. *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 636 (Fed.Cir.), *cert. denied*, 502 U.S. 1013, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991); *see also id.* at 635–38 (declaratory defendant's statement releasing plaintiff from liability for infringement claims rendered plaintiff's claim moot and therefore divested court of jurisdiction, even though statement was made well after litigation began); *Chubb Integrated Systems Ltd. v. The National Bank of Washington*, No. 82–3478, 1983 WL 548, at *5 (D.D.C. June 2, 1983) (patentee's covenant not to sue declaratory plaintiff removed any reasonable apprehension of suit). Since Dow could never be liable to Viskase for helping its customers make films that allegedly infringe Viskase's patents, it has no reasonable apprehension of suit for contributory infringement or inducement to infringe.

■ The direct infringement cause of action is more problematic. It is clear that Dow itself has not manufactured, used, or sold biaxially-stretched shrink films and therefore cannot be held liable as a direct infringer. 35 U.S.C. § 271(a). But Dow claims that it can maintain a declaratory judgment action based on the activities of its customers (which arguably infringe) and Viskase's threat of a direct infringement suit against them. Viskase disagrees, arguing that Dow cannot satisfy the actual controversy test because its interest in the dispute is purely economic.

Although there is language in the case law to support both parties' positions,[4] Dow is

---

**4.** Language supporting Dow can be found in *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 737 (Fed.Cir.1988) (actual controversy test contains "two core elements: (1) acts of defendant indicating an intent to enforce its patent; and (2) acts of plaintiff that might subject it *or its customers* to suit for patent infringement") (emphasis added); *International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1211 (7th Cir.1980) ("A plaintiff's reasonable apprehension [of suit] may be the product of an implied charge of infringement or a course of conduct which would lead a reasonable man to fear that he *or his customers* face suit or the threat of suit.") (emphasis added); *Grafon Corp. v. Hausermann*, 602 F.2d 781, 784 (7th Cir.1979) (same);

*Field Container Co. v. Somerville Packaging Corp.*, 842 F.Supp. 338, 341 (N.D.Ill.1994) ("To satisfy the 'reasonable apprehension' requirement, [the plaintiff] need not demonstrate that [the patentee] made an express charge of infringement, or expressly threatened suit; rather, [the plaintiff] may satisfy this element by demonstrating the existence of an implied charge of infringement or a course of conduct by [the patentee] which would give rise to a reasonable belief that [the plaintiff] *or its customers* would be sued.") (emphasis added); and *Applexion*, 1995 WL 229049 at *6 ("At a fundamental level, the actual controversy test in patent actions requires two core elements: (1) acts of the defendant indicating an intent to enforce its patent; and (2) acts of the

clearly correct that in some instances the activities of a customer and the patentee's threats of suit against a customer can support jurisdiction over a manufacturer's declaratory judgment action. But we conclude that these so-called "customer suits" do not encompass the situation that confronts us here.

In the typical customer suit, although the customer is the party threatened with a lawsuit, it is the manufacturer that makes the potentially infringing product; the customer merely sells that product without alteration, incorporates it in its own product, or employs it as part of a manufacturing process. Since the manufacturer in such cases is itself a potential infringer and the customer is merely using the manufacturer's product, a threat of suit against the customer "reasonably implies potential suit against the manufacturer." *Viking Injector Co. v. Chemtron, Inc.,* No. 3:CV–93–0791, 1993 WL 625543, at *3 (M.D.Pa. Nov. 9, 1993). *See, e.g., Grafon Corp. v. Hausermann,* 602 F.2d 781, 782–84 (7th Cir.1979) (customers purchased abrading machines from declaratory plaintiff; patentee's threats against plaintiff's customers sufficient to establish jurisdiction); *Joseph Bancroft & Sons Co. v. Spunize Co. of America,* 268 F.2d 522, 523 (2d Cir.1959) (patentee's suit against plaintiff-manufacturer's licensee, who made potentially infringing product based on plaintiff's methods, was sufficient to establish actual controversy between manufacturer and patentee); *Dickey v. B & H Manufacturing, Inc.,* No. CV–F–91–481 OWW, 1991 WL 322239, at *2–3 (E.D.Cal. Dec. 18, 1991) (in finding that manufacturer of allegedly infringing labeling machine had reasonable apprehension of suit by patentee, court considered threats of suit against manufacturer's customers, who merely purchased the machine); *Akzona Inc. v. E.I. du Pont de Nemours & Co.,* 662 F.Supp.

603, 612–13 (D.Del.1987) (threat of suit against customers who used declaratory plaintiff's aramid fibers to fashion various end products could support jurisdiction; plaintiff's fibers themselves potentially infringed defendant's patents); *Electro Medical Systems S.A. v. Cooper Lasersonics, Inc.,* 617 F.Supp. 1036, 1037 (N.D.Ill.1985) (threats of suit against declaratory plaintiff's customers were sufficient basis for jurisdiction where customers merely purchased or distributed plaintiff's allegedly infringing device).

On the other hand, where the manufacturer's product does not infringe the patent in question but its customers use the product to make an infringing device, courts typically hold that the manufacturer lacks any reasonable apprehension of suit for direct infringement, even if the customers are being threatened with legal action. *See, e.g., Viking Injector Co. v. Chemtron, Inc.,* No. 3:CV–93–0791, 1993 WL 625543, at *3 (M.D.Pa. Nov. 9, 1993) (court lacked jurisdiction over plaintiff's declaratory judgment claim, despite fact that plaintiff's customers were threatened with suits, because plaintiff manufactured only noninfringing component parts; plaintiff's customers were the ones who assembled the parts into an infringing device). In other words, the customer suit cases show that a manufacturer generally can establish jurisdiction based on a threat of suit against its customer only when the manufacturer is itself involved in infringing the patent and the customer is "merely a conduit for the manufacturer." *Viking Injector,* 1993 WL 625543 at *3. That is not the case here.

Dow asks us to go a step further and hold that its substantial economic interest in its sales of polymers to ANC, Cyrovac, and other customers constitutes a sufficiently real

---

plaintiff that might subject it *or its customers* to suit for patent infringement.") (emphasis added). But many cases state the test in a manner more favorable to Viskase. *E.g., BP Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 978 (Fed.Cir. 1993) ("There must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension *on the part of the declaratory plaintiff* that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken

with the intent to conduct such activity.") (emphasis added); *Spectronics Corp. v. H.B. Fuller Co.,* 940 F.2d 631, 634 (Fed.Cir.1991) ("First, *the accused infringer* must have actually produced or prepared to produce an allegedly infringing product.... Second, the patent holder's conduct must create an objectively reasonable apprehension *on the part of the accused infringer* that the patent holder will initiate suit if the allegedly infringing activity continues.") (emphasis added).

interest in the dispute to sustain jurisdiction. In support of its position, Dow cites two cases: *Wallace & Tiernan, Inc. v. General Electric Co.,* 291 F.Supp. 217 (S.D.N.Y.1968), and *Airship Industries (UK) Ltd. v. Goodyear Tire & Rubber Co.,* 643 F.Supp. 754 (S.D.N.Y.1986). *Airship* was a trademark case in which Airship, a blimp manufacturer, sought to enjoin Goodyear from suing Airship's customers under state antidilution statutes. The customers had used Airship's blimps in advertisements, prompting Goodyear to sue to protect its trademark rights in the shape and symbol of its blimps. The court held that although Airship itself was not threatened with suit, it could maintain a declaratory judgment action against Goodyear because it would suffer a " 'distinct and palpable injury' " if its customers "decide[d] not to buy or lease blimps from Airship as a result of Goodyear's actions." 643 F.Supp. at 758 (quoting *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975)).

In *Wallace & Tiernan,* the defendant held a patent for a "three-membered composition" consisting of polyethylene, a curing agent, and a filler. 291 F.Supp. at 218 (emphasis removed). All manufacturers of the composition operated under license from the patentee, and the overwhelming majority used "Dicup" as the curing agent. The plaintiff developed a competing curing agent known as Lupersol. The defendant maintained that compositions made with Lupersol were covered by its patent and demanded royalties from its licensees for any such compositions. The plaintiff attempted to induce its customers (the defendant's licensees) to use Lupersol, but the customers deferred to the defendant's view that using Lupersol obliged them to pay royalties—the cost of which rendered Lupersol uncompetitive with Dicup. The plaintiff was therefore deprived of the chief market for its product and sought declaratory relief against the defendant. Although the defendant had asserted that it would never sue the plaintiff to enforce its patent, the court found that it had jurisdiction because "the injury to plaintiff's business" rendered the dispute " 'real and substantial.' " *Id.* at 221 (quoting *Aetna Life,* 300 U.S. at 240, 57 S.Ct. at 463). In defense of its decision, the court noted that (a) the plaintiff had developed Lupersol specifically for the use it sought to defend and that Lupersol had no other major uses, (b) the plaintiff stood to lose considerable revenue if its customers did not purchase Lupersol, (c) the plaintiff's customers were unwilling to commence proceedings to resolve the dispute, and (d) the plaintiff had indemnified its customers against enforcement suits by the defendant. *Id.* at 222–23.

Although *Airship* and *Wallace & Tiernan* support Dow's position, we do not consider them sufficiently persuasive to warrant finding an actual controversy here. *Airship* was a trademark case, and the court neither applied the actual controversy test that governs this dispute nor conducted a rigorous analysis of the jurisdictional question. Moreover, unlike Dow, the plaintiff in *Airship* apparently could have been held liable for its actions; after all, Airship sued for a declaratory judgment that "neither *it* nor any of its customers" had violated an antidilution statute "by *permitting* or engaging in blimp advertising." 643 F.Supp. at 757 (emphasis added).

*Wallace & Tiernan,* though factually very similar to our case, is also distinguishable. The plaintiff in that case had agreed to indemnify its customers against the defendant's enforcement of its patent. That fact was critical to the court's decision, and rightly so: by indemnifying a customer, a manufacturer assumes a legal duty and therefore acquires the kind of real legal interest in the controversy that the Declaratory Judgment Act requires. *See Bancroft,* 268 F.2d at 523 (declaratory plaintiff's contractual obligation to pay for customer's defense established actual controversy between plaintiff and patentee). In contrast, Dow alleges only that one of its customers sought indemnification from it; it does not say that it has actually agreed to indemnify anyone against Viskase's claims. This is not enough to establish an actual controversy. *See Viking Injector,* 1993 WL 625543 at *3–4 (no actual controversy where plaintiff's customer sought indemnification but there was no evidence that plaintiff could be held liable on that basis).

*Wallace & Tiernan* is unusual in that the court in that case found jurisdiction despite the fact that the plaintiff-manufacturer produced only a noninfringing component and its customers were the potential infringers. Despite this abnormality, we agree with *Wallace & Tiernan* insofar as it held that a manufacturer's obligation to indemnify customers threatened with suit is a sufficient basis for jurisdiction over the manufacturer's declaratory judgment action. After all, indemnification is a legal obligation. Dow would have us read the case as holding that jurisdiction is appropriate where a manufacturer has a substantial economic interest in a dispute and its product is "closely and inextricabl[y] related to th[e] controversy." Dow's Br. in Opposition to Motion to Dismiss at 12. We reject *Wallace & Tiernan* to the extent that it admits of such an interpretation.

In sum, although in certain circumstances a manufacturer can maintain a declaratory judgment action based on threats against its customers even where the manufacturer itself is under no threat of suit, we do not believe those circumstances are present here. Dow may stand to lose business, but it has not alleged that it has any *legal* interest at stake. Declaratory relief is available only to those "who [are] reasonably at legal risk because of an unresolved dispute" and therefore is inappropriate here. *Applexion,* 1995 WL 229049 at *3; *see also Arrowhead,* 846 F.2d at 735 (Declaratory Judgment Act grants courts jurisdiction over only those cases in which there is "'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of [declaratory relief]'") (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)).

### *CONCLUSION*

Viskase's motion to dismiss for lack of subject matter jurisdiction is granted.