SIGMA–TAU INDUSTRIE FARMACEU-
TICHE RIUNITE, S.P.A. and Bi-
osint, S.p.A., Plaintiffs,

v.

LONZA, LTD., Defendant.

No. Civ.A. 97–0562 (JHG).

United States District Court,
District of Columbia.

Feb. 22, 1999.

Jean–Paul Lavalleye, Jeffrey Bayne McIntyre, Christina Miriam Gadiano, Norman F. Oblon, Richard D. Kelley, Catherine B. Richardson, J. Derek Mason, Oblon, Spivak, McClelland, Maier & Neustadt, Arlington, VA, Christina Miriam Gadiano, Norman F. Oblon, Catherine B. Richardson, Richard D. Kelly, J. Derek Mason, Oblon, Spivak, McClelland, Maier & Neustadt, Arlington, VA, for Sigma–Tau Industrie, Farmaceutiche Riunite, S.p.A., plaintiff.

Douglas P. Lobel, Kelley, Drye & Warren, L.L.P., Washington, DC, Darby & Darby P.C., New York City, for Lonza, Ltd., defendant.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Plaintiffs, Sigma–Tau Industrie Farmaceutiche Riunite, S.p.A. ("Sigma–Tau") and its subsidiary Biosint, S.p.A. ("Biosint"), commenced this action against defendant, Lonza, Ltd., for a declaratory judgment of non-infringement and invalidity of United States Patent No. 5,073,376 (" '376 patent"). Currently pending before this Court is Lonza's renewed motion to dismiss for lack of subject matter jurisdiction.[1] Upon consideration of the entire record in this matter, and for the reasons discussed below, the motion will be denied.[2]

## I. Background

*The Patent*

On December 17, 1991 the United States Patent and Trademark Office granted the '376 patent to Willibald Kohl and Thomas Scholl. The defendant, Lonza, Ltd., is the named assignee. The following facts are undisputed. The '376 patent involves a preparation for enteral (oral) application of a compound known as L-carnitine L-tartrate ("LCLT"). Both L-carnitine and L-tartrate are common substances. L-carnitine supplies the muscles with energy in order to increase endurance and stress tolerance. *See* Ren. Mot. to Dismiss Exh. M. It is generally used as a food supplement by athletes and as therapeutic medicine for treatment of metabolic diseases. *See id.* L-carnitine, by itself, is highly hygroscopic[3] and, as such, will liquefy in a short period of time. *See id.* For this reason, L-carnitine is sold in liquid form for use parenterally[4] or in tablets that are packaged individually in air-tight seals. *See id.*

Drs. Kohl and Scholl discovered that the hygroscopicity of L-carnitine is essentially eliminated when it is combined with the substance known as L-tartrate. *See id.* Thus, by combining the two substances, Drs. Kohl

---

1. Lonza filed an initial motion to dismiss for lack of subject matter jurisdiction on September 29, 1997. *See Sigma–Tau v. Lonza*, Civ No. 97–0562 (D.D.C. June 2, 1998). That motion was premature, however, as the parties had not completed discovery and were unable to provide the Court with sufficient information to rule on the motion. The motion was denied on June 2, 1998 without prejudice to renew. The parties have adopted many of their arguments and exhibits from the prior motion and the Court has cited to them as "Orig. Mot. to Dismiss." References to exhibits and arguments contained in the renewed motion to dismiss are cited as "Ren. Mot. to Dismiss."

2. Pursuant to Local Rule 108(f), defendant's request for oral argument is denied as the briefs and exhibits filed by the parties provide sufficient information for the Court to make her ruling.

3. Webster's defines "hygroscopic" as "readily absorbing moisture, as from the atmosphere." WEBSTER'S NEW RIVERSIDE UNIVERSITY DICTIONARY *(1994).*

4. Webster's defines "parenterally" as "taken into the body or administered in a manner other than through the digestive tract, as by intravenous or intramuscular injection." WEBSTER'S NEW RIVERSIDE UNIVERSITY DICTIONARY *(1994).*

and Scholl discovered a use for L-carnitine that "is preferably suitable in particular for producing tablets or capsules" that do not need special air tight seals and can be taken orally. *Id.*

The '376 patent has ten claims involving the preparation of LCLT for oral use. Claim 1 states

A preparation for enteral [oral] application comprising at least one tablet composed of the sale of L-carnitine with L-tartaric acid [L-tartrate] in the molar ratio of 2:1, powder composed of the salt of L-carnitine with L-tartaric acid in the molar ratio of 2:1 or at least one capsule containing the sale of L-carnitine with L-tartaric acid in the molar ratio of 2:1.

*Id.* Claim 2 involves the use of adjuvants (additives) such as amino acids and binding agents to make tablets, capsules and powder suitable for oral administration. *See id.* Claims 3 and 4 involve combining sugar additives to LCLT to form a tablet. *See id.* Claims 5 and 6 involve a preparation for LCLT in powder form and capsule form. *See id.* Claims 7 through 9 involve a preparation for oral administration of LCLT. *See id.* Claim 10 involves the oral consumption of LCLT by a human. *See id.*

### The Plaintiffs

Sigma–Tau is an Italian pharmaceutical company that, according to plaintiff, is the "world's largest manufacturer of L-carnitine, its salts and derivatives, such as L-carnitine tartrate." *See* Opp. to Orig. Mot. to Dismiss at 4. Biosint, S.p.A. was founded in the early 1980's as a subsidiary of Sigma–Tau "specifically to produce L-carnitine, including L-carnitine tartrate, both for sale and for use by Sigma–Tau." *Id.* Biosint produces and sells LCLT as a raw material, not a finished product, in both the European and American markets. *See id.* at 5; Ren. Mot. to Dismiss at 18. This raw material can be converted by its purchasers into a finished product that is either a solid or a liquid. *See* Ren. Mot. to Dismiss at 29.

### Biosint's Sales of LCLT to Seltzer Chemicals

Biosint, S.p.A. imported LCLT into the United States and sold it to an American Company, Seltzer Chemicals, Inc. ("Seltzer"), at unspecified dates in 1991 and 1992. *See* Ren. Mot. to Dismiss at 26. The parties do not address whether Biosint and/or Sigma–Tau were aware of Seltzer's intent with respect to the raw material LCLT. However, it is apparent that Seltzer sold the product for oral use because on April 1, 1992 Lonza sent a letter to Seltzer advising that Seltzer was infringing the '376 patent by "selling [LCLT] to others for making certain preparations for oral administration." Orig. Mot. to Dismiss Exh. DX C. Seltzer responded by forwarding a letter to Sigma–Tau advising that "[a]s a direct result of [Lonza's] letter, out of a desire to avoid becoming involved in litigation, Seltzer Chemicals has ceased sales of [LCLT]." Orig. Mot. to Dismiss Exh. DX B. Biosint discontinued its sales of LCLT to Seltzer. *See* Ren. Mot. to Dismiss at 26. There were no other sales to customers in the United States between 1992 and 1994. *See id.*

### Biosint's Sales of LCLT to Other American Customers

Between 1994 and February 1996, plaintiffs sold LCLT in the United States to one other customer. *See* Ren. Mot. to Dismiss at 26. This company was using the LCLT material to make tablets or pills. *See* Opp. to Orig. Mot. to Dismiss at 5. In February 1996, however, Sigma–Tau made a corporate decision not to sell LCLT for use in oral application to countries, including the United States, where Lonza has a patent. *See* Ren. Mot. to Dismiss at 27. Although plaintiffs made no further sales after 1996 to United States customers, it did send free "samples of the raw material [LCLT] to customers in the United States" advising that due to Lonza's patent the product could be used for liquid not oral application. *See id.* at 29.

### Biosint, U.S.A.

In February 1997, one month before this case was commenced, plaintiffs created Biosint U.S.A. as a subsidiary of Sigma–Tau. "The purpose of Biosint U.S.A. [was] to give [Sigma–Tau and Biosint, S.p.A.] a permanent U.S. L-carnitine presence—including identifying market opportunities, ascertaining that the products meet the market demands, preparing advertising brochures and material,

preparing sales offers and organizing and spreading the high-profile cultivation of the Biosint products." Opp. to Orig. Mot. to Dismiss at 14. Biosint, U.S.A. sells all of Biosint's carnitine products, not just LCLT. *See* Ren. Mot. to Dismiss at 30. On July 15, 1997, approximately four months after this action was commenced, Biosint sold one 25 kilogram drum containing LCLT in powder form to Biosint, U.S.A. for warehousing purposes. *See id.* at 28.

### The European Equivalent Patent

Lonza has a European patent equivalent to the '376 patent, although the European patent requires the addition of adjuvants (additives) to the LCLT for oral use. Sigma–Tau and Biosint sold LCLT in bulk raw material to European clients. In February 1997 plaintiffs received a letter from Lonza advising that sale of LCLT "in Europe for application in tablets, capsules or powder mixes" constitutes an infringement of the Lonza European patent. *See* Opp. to Ren. Mot. to Dismiss at 5. Plaintiffs responded that the sale of the bulk raw material LCLT did not infringe the patent because the patent only covered solid forms mixed with adjuvants. *See* Opp. to Ren. Mot. to Dismiss Exh. DX H. The reply went on to note that LCLT is "a known substance" for which there are many uses "outside the scope [of Lonza's] patent." *Id.* Thus, plaintiffs took the position that the Lonza European patent covers only "solid oral administration forms wherein [LCLT] is an admixture with adjuvants." *Id.* Although the Complaint in this matter states that Sigma–Tau filed an opposition proceeding against the European equivalent patent, the Court is not aware of the current status of that proceeding.

### The Declaratory Judgment Action

On March 20, 1997, Sigma–Tau and Biosint filed a declaratory judgment action in this Court seeking, *inter alia,* a declaration that the '376 patent is invalid and sale of LCLT in the United States does not constitute infringement. Defendant moved to dismiss the complaint on the basis that the plaintiffs had not established a case or controversy sufficient to sustain declaratory judgment jurisdiction.

## II. *Discussion*

### Declaratory Judgment Standard

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), states:

In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

Thus, paralleling Article III of the Constitution, the Declaratory Judgment Act requires that an "actual controversy" exist between the parties before a federal court may exercise jurisdiction over an action for a declaratory judgment in a patent case. *See EMC Corp. v. Norand Corp.,* 89 F.3d 807, 810 (Fed.Cir.1996). With regard to suits under the Declaratory Judgment Act requesting a declaration of patent non-infringement and/or invalidity, the Federal Circuit prescribes a two-part inquiry to determine whether an actual controversy exists sufficient to confer jurisdiction on a federal court. *See id.* at 811; *see also BP Chems. Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 978 (Fed. Cir.1993); *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736 (Fed. Cir.1988). First, the defendant's (patentee's) conduct must have created an objectively reasonable apprehension on the part of the plaintiffs that the defendant will initiate an infringement suit if the activity in question continues. *See BP Chems. Ltd.,* 4 F.3d at 977; *Arrowhead,* 846 F.2d at 736; *see also EMC Corp.,* 89 F.3d at 811. To be placed in reasonable apprehension of suit does not require an "express charge of infringement and threat of suit." *EMC Corp.,* 89 F.3d at 810. Rather, "such apprehension may be induced by subtler conduct if that conduct rises 'to a level sufficient to indicate an intent [on the part of the patentee] to enforce its patent,' i.e., to initiate an infringement action." *Id.* (quoting *Shell Oil v. Amoco Corp.,* 970 F.2d 885, 887 (Fed.Cir.1992)).

Second, the plaintiff must actually produce or be prepared to produce an allegedly infringing product. *See BP Chems., Ltd.,* 4 F.3d at 977; *Arrowhead,* 846 F.2d at 736;

*see also EMC Corp.,* 89 F.3d at 811. To meet this second prong, plaintiff "must be engaged in an actual making, selling, or using activity subject to an infringement charge or must have made meaningful preparation for such activity." *Arrowhead,* 846 F.2d at 736. "Whether a declaratory plaintiff's ability and definite intention to undertake a potentially infringing activity constitutes sufficient preparation is a question of degree to be resolved on a case-by-case basis." *Id.*

Once subject matter jurisdiction is established, the decision whether to exercise jurisdiction over a declaratory judgment action is discretionary. *See EMC Corp.,* 89 F.3d at 813.

*First Prong: Reasonable Apprehension of Suit*

██ The parties do not dispute that plaintiffs were put in reasonable apprehension of suit by Lonza. Lonza sent a letter to plaintiff's customer, Seltzer, advising that Seltzer's act of selling LCLT for oral administration "actively induces others to infringe Lonza's ['376 patent] and/or contributes to such infringement," and that Lonza "values highly its intellectual property and will take all necessary steps to enforce its rights when wrongfully infringed by third parties." Orig. Mot. to Dismiss Exh. DX C. The letter also stated that Seltzer could be "liable to the patent owner as an infringer." *Id.* In addition, Lonza expressly threatened Biosint with litigation on the European equivalent patent. Approximately one month before this declaratory judgment action was filed, Lonza sent Biosint a letter stating that if Biosint continued to sell LCLT "in Europe for application in tablets, capsules or powder mixes," Lonza would "defend [its] patent with all legal means and file patent infringement claims against [Biosint] with the relevant courts." *See* Opp. to Ren. Mot. to Dismiss Exh. PX A.

Whether or not a reasonable apprehension exists depends on the totality of the defendant's conduct. *See Arrowhead,* 846 F.2d at 736. The Court finds that the language contained in the two letters sent by Lonza was sufficient to create a reasonable apprehension on the part of plaintiffs that Lonza would sue for patent infringement should plaintiffs continue to sell LCLT for oral use.[5]

*Second Prong: Production or Preparation to Produce a Potentially Infringing Product*

The second prong of the jurisdiction inquiry is that the plaintiff produce or be prepared to produce an intentionally infringing product. *See BP Chems., Ltd.,* 4 F.3d at 977. In order to establish if plaintiffs satisfy this second prong, the Court must determine first if the LCLT produced by plaintiffs is a potentially infringing product, and second whether plaintiffs are preparing to produce and distribute that product.

*Potentially Infringing Product*

The parties agree that the '376 patent only covers oral uses of LCLT. The plaintiffs produce LCLT for a variety of uses, including liquid application, that are not covered by the '376 patent. Thus, in order to infringe the '376 patent, plaintiffs must either be directly producing LCLT for oral use, or inducing its customers to use the LCLT for oral application. As the defendant has noted, if the LCLT sold by plaintiffs was converted by a customer for use orally, "[p]laintiffs would be guilty of inducing infringement." Renewed Mot. to Dismiss at 31; *see* 35 U.S.C. § 271(b); *Dawson Chemical Co. v. Rohm and Haas Co.,* 448 U.S. 176, 188, 100 S.Ct. 2601, 65 L.Ed.2d 696 (1980); *Dow Chemical v. Viskase Corp.,* 892 F.Supp. 991, 994 (N.D.Ill.1995).

The parties further agree that for capsules and tablets, the LCLT has to be combined with other materials to make it suitable for oral ingestion. The parties disagree, however, whether LCLT itself, which in raw mate-

---

**5.** The threat of infringement does not have to be directed against plaintiffs specifically. It is sufficient to create a reasonable apprehension if plaintiffs' customers, or other competitors, are threatened. *See G. Heileman Brewing Co. v. Anheuser–Busch,* 873 F.2d 985, 990 (7th Cir.1989) (reasonable apprehension exists when there is an implied charge or set of circumstances "which would cause a reasonable man to fear that he or his customers" may be sued for patent infringement); *Nippon Electric Co. v. Sheldon,* 489 F.Supp. 119, 209 U.S.P.Q. 1023, 1025 (S.D.N.Y. 1980) ("The accusation [of infringement] need not be made directly to the declaratory judgment plaintiff, but may be made to its customers or the industry at large.").

rial is a powder produced by plaintiffs, constitutes a preparation for oral application covered by the '376 patent.

The plaintiffs claim they are directly producing an infringing product because the patent covers "any quantity of [LCLT] which can be taken orally, without restrictions as to amount, package form or dose." Opp. to Ren. Mot. to Dismiss at 7. Plaintiffs claim that a person can open a drum of LCLT produced by Biosint and consume the powder directly with a spoon. *See id.* at 8. Thus, plaintiffs argue that they are directly infringing the patent by producing LCLT because "the '376 patent cover[s] a composition for oral application comprising LCLT powder alone, in any amount, which is exactly what plaintiffs have imported, offered for sale, sold and advertised in the United States and are prepared to sell if the '376 patent is found to be invalid and/or unenforceable." *See* Opp. Mot. to Dismiss at 9.

The defendant argues that "the invention was not the creation of the powder itself but the ability to provide a form of powder that was ready for oral ingestion." Ren. Mot. to Dismiss at 10. It claims that the term "preparation for enteral application" in the '376 patents refers to an oral dosage form and not the bulk raw material produced by the plaintiffs. For example, the defendant states that "the bulk [LCLT] raw material would have to undergo a further processing step (such as, for example, filling the powder is [sic, in] small sachets . . .) to be made into dosage form." *Id.* at 19.

In the order dismissing the original motion to dismiss, the Court initially thought that the second prong of the test for determining if an actual controversy exists "will turn upon the complex matter of interpretation of the '376 patent's claims." *Sigma–Tau v. Lonza,* Civ No. 97–0562 (D.D.C. June 2, 1998) at 3. Upon further review of this matter and the supplemental documentation and exhibits provided by the parties, however, the Court is of the opinion that the defendant's motion to dismiss can be decided without construing the patent claims. Based on the present record, the plaintiffs have potentially infringed the patent in a manner sufficient to establish an actual controversy if

they sell LCLT with the knowledge or intent that their customers will use the product for oral application. This applies if the plaintiffs are directly responsible by selling LCLT to customers who intend to consume it in spoonfuls, or if plaintiffs are indirectly responsible by inducing their customers to take the further step of putting the LCLT capsules, tablets or some type of specific dosage form. Thus, the issue at this juncture is whether or not the plaintiffs are prepared to produce LCLT and sell it to their customers for any oral use.

*Preparation to Produce Potentially Infringing Product*

It is well established that a mere interest in producing a superior patented product is insufficient to create a justiciable controversy. *See e.g., BP Chems.,* 4 F.3d at 980. Instead, any potentially infringing activity must be "real and immediate" and not "prospective and uncertain of occurrence." *Super Sack Mfg. Corp. v. Chase Packaging Corp.,* 57 F.3d 1054, 1058 (Fed.Cir.1995).

Plaintiffs claim they have a real and immediate intent to sell LCLT in the United States for oral ingestion. Several factors support this conclusion. Plaintiffs have a previous history of selling LCLT to customers for oral application. Biosint sold LCLT to Seltzer in 1991 and 1992 and to another customer during the years 1994 through 1996. *See Interdynamics, Inc. v. Firma Wolf,* 698 F.2d 157, 172 (3d Cir.1982) (quoting *Super Prod. Corp. v. DP Way Corp.,* 546 F.2d 748, 753 (7th Cir.1976) (noting as persuasive in establishing subject matter jurisdiction the fact that plaintiff has a previously established "business enterprise specifically directed to the manufacture and sale of a potentially infringing product")).

It was only after plaintiffs became fearful of a lawsuit for infringement that they ceased selling LCLT in the United States for oral consumption. The defendant argues that plaintiffs' cessation of activity, coupled with their statement that it would not sell LCLT for customers to use orally unless the Court declares the patent invalid or unenforceable, suggests that plaintiffs have no

**32**

immediate intention of marketing the potentially infringing product. There is no indication, however, that plaintiffs digressed from their original intention, dating back to 1991, to sell LCLT for oral consumption. The fact that plaintiffs opted to await the Court's decision on the declaratory judgment action before they resumed selling their product does not defeat jurisdiction. *Cf. Super Prod. Corp.*, 546 F.2d at 748 (party faced with choice of "either incurring potential liability for infringement of the defendant's patent or abandoning existing business enterprise" can instead opt to file a declaratory judgment action and await the Court's decision); *Electro Med. Sys. v. Cooper Lasersonics*, 617 F.Supp. 1036, 1038 (N.D.Ill.1985) (jurisdiction appropriate where foreign distributor awaited outcome of patent infringement action before commencing distribution of product in the United States).

■ Plaintiffs are currently ready and able to provide LCLT to customers who intend to use it for oral consumption. This is evidenced by the establishment and delivery of LCLT to Biosint, U.S.A. for warehousing, the samples provided to customers, the marketing and advertising of the product, the sales of LCLT in Europe, and the prior sales in the United States. In addition, without commenting on the merits of the contract filed under seal and dated four months after the complaint in this action was filed, Sigma–Tau indicates that it has agreed "to offer to supply GNC with LCLT once plaintiffs are legally free to do so." Opp. to Ren. Mot. to Dismiss at 13. "Although it is the situation at the time suit was filed that establishes the existence vel non of the actual controversy, subsequent events can reinforce the correctness of the conclusion." *BP Chems.*, 4 F.3d at 980 (citations omitted). Thus, Sigma–Tau's agreement with GNC can be considered as part of the "totality of the circumstances" that indicate plaintiffs' present ability and intent to produce the potentially infringing product. *See id.* (citing *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 881 (Fed.Cir.1983)).

### III. *Conclusion*

Plaintiffs have established that they have both a reasonable apprehension of suit and a present intent to produce a potentially infringing product. As a result, an actual controversy exists and this Court exercises its jurisdiction over this declaratory judgment action. It is therefore

ORDERED that defendant's renewed motion to dismiss for lack of jurisdiction is hereby denied.

IT IS SO ORDERED.